72 N.J. 112 (1976)
367 A.2d 1160
IN THE MATTER OF THE GUARDIANSHIP OF FELICIA DOTSON, JESSIE MAE VICKERS, ENNIS DOTSON, HENRY BOOKER, T.W. VICKERS.
The Supreme Court of New Jersey.
Argued October 20, 1975.
Decided December 16, 1976.
*114 Mr. Michael S. Bokar, Deputy Attorney General, argued the cause for appellant Division of Youth and Family Services (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Bokar, on the brief).
Mr. Joseph Lipofsky argued the cause for respondent Lizzie Mae Dotson.
Mr. E. John Walzer, Jr., argued the cause for amicus curiae New Jersey State Office of Legal Services (Mr. Raymond J. Lesniak, Interim Director, attorney; Mr. Walzer, of counsel and on the brief).
PER CURIAM.
This case involves the involuntary termination of parental rights. As framed by the parties the issue is whether an indigent has an absolute and unconditional right, constitutional or otherwise, to be provided at State expense with a full and complete transcript for use on appeal. At the outset we observe that under the circumstances *115 before us we need not resolve this broad question in order to decide the case, cf., e.g., Township of Ewing v. King, 69 N.J. 67, 68 (1976). We intend, however, to furnish some guidance to trial courts who may be confronted with the general problem of how best to insure an indigent in a civil case the essentials by way of a record of the trial proceedings for use on an appeal; but we turn first to the instant matter.

I
On June 6, 1973 the Division of Youth and Family Services (DYFS) in the Department of Institutions and Agencies commenced proceedings pursuant to N.J.S.A. 30:4C-15 to obtain a judgment that the best interest of four minor children born to Lizzie Mae Dotson required that DYFS be made their guardian. After a one-day hearing on the DYFS petition, during which time oral testimony was taken, the judge of the Juvenile and Domestic Relations Court ordered that all parental ties between the children and their natural parents "be terminated for all purposes" and that the minor children be committed to the "care, custody and guardianship" of DYFS. During the course of the hearing Ms. Dotson was represented by Somerset-Sussex Legal Services.
A Notice of Appeal was filed on behalf of Ms. Dotson. She then applied before the trial judge for a waiver of the fees for the transcript because of her indigency and for a stay of the order terminating her parental ties. The trial judge granted the stay and in a written opinion held that the waiver of the fees for the transcript was appropriate both on constitutional grounds and under the Rules governing the Courts, although he was of the view that the appeal had no merit. He ordered the State to bear the costs of preparing the transcript.
The Appellate Division affirmed after the State's interlocutory appeal on the transcript question, holding that the trial court did not mistakenly exercise its discretion under *116 R. 1:1-2 in granting Ms. Dotson's request and specifically ordering DYFS to "pay the costs of the transcript." One judge concurred but preferred to "rest the result on constitutional grounds * * *." We granted the State's petition for certification. 68 N.J. 171 (1975).[1]
While, as indicated, certain pertinent instructions will follow for the benefit of those who must decide these issues at the trial level, we dispose of the case before us in summary fashion, in view of these facts: (1) the hearing below lasted only one day; (2) the cost of transcribing the testimony will be less than the cost of further legal consultation and court hearings revolving about a truncated record; (3) these proceedings have been pending for more than three years; and (4) even under an expedited procedure it is possible that another year will pass before this controversy is finally settled. These factors, particularly the desirability of avoiding further delay, compel us to affirm the judgment of the Appellate Division, in turn affirming the order of the trial court that the Division of Youth and Family Services furnish Ms. Dotson with a complete transcript for her use on appeal.

II
We go further than required by the case before us to set some guidelines for determining whether an indigent aggrieved party may present effective argument on appeal without a complete transcript of testimony at trial. Preliminarily, we observe that ordinarily the transcript is an integral part of the record on appeal. R. 2:5-4(a). It gives the reviewing court a basis for a complete and proper analysis of all the issues before it. It also provides the appellate advocate with a firm foundation for his arguments that trial error occurred *117 or that the cause of justice is better served under the facts of the case by a change in the law.
However, under appropriate circumstances the same goals can be achieved without the filing of a complete transcript. This has been recognized in R. 2:5-3(c), which provides for the abbreviation of the transcript; in R. 2:5-3(e), providing for a statement of proceeding in lieu of transcript when no verbatim record has been made of the proceedings; and in State v. Smith, 84 N.J. Super. 452 (App. Div.), certif. den., 43 N.J. 270 (1964), dealing with judicial reconstruction of the record after a hearing when the stenographer's trial notes have been lost.
None of the just-mentioned procedures applies on its face to the situation where an indigent requests a waiver of the transcript filing fees and assumption of them by the State. Where the specified grounds of appeal do not require a complete transcript, however, those procedures may provide a means of meeting an indigent's needs for prosecution of the appeal while at the same time sparing the possible expense to the State of having to furnish a transcript. Accordingly, we hold that where an indigent cannot afford the production of a complete transcript and the grounds for appeal by their nature are such that verbatim reconstruction of the entire record is not necessary for full and complete appellate review, the trial judge should direct the parties to pursue the procedure set out in R. 2:5-3(e). If the parties cannot agree on a statement of proceedings, the court may, in its discretion, hold a hearing to resolve any disagreements. At that hearing the judge may call upon the court reporter who served at the original trial to read from his or her notes as an aid in the resolution of any dispute. The court may also, if necessary, incorporate certain passages verbatim in the statement of proceedings. If such incorporation appears impractical because of the length of these portions of testimony, the trial court may obtain from the reporter an estimate of the cost of transcription of such portions in order to ascertain *118 if the financial condition of the appellant is such that these costs would be unreasonably burdensome.

III
We focus now on the specific type of proceeding before us. It presents circumstances of an unusual character. While it is denominated a civil matter, it is almost quasi-criminal in nature, since it seeks to terminate for cause all parental ties between the children here involved and their natural parents. It is not the ordinary civil suit where, except for the possible waiving of filing fees, the parties are left to their own resources in the litigation they pursue. As such, it is deserving of special treatment.
In cases of this sort the trial judge should first decide whether the grounds stated for the appeal are frivolous. Cf. Stewart v. Stewart, 59 N.J. 301 (1971). If not, the trial judge should then decide whether in fact the issues to be presented on appeal are such that they can adequately be determined on the basis of a truncated record. If they can, a full transcript will not be necessary. Issues falling into this category might include those suggested to us at oral argument in the instant case but not briefed or otherwise adverted to: (a) the trial court erred in admission of certain allegedly hearsay evidence; (b) the burden of proof which the DYFS must meet should be proof beyond a reasonable doubt; and (c) the trial court used a "best interests of the children" test for termination of parental rights whereas our case law calls for a standard "much beyond" that. The list is obviously illustrative rather than exclusive, and the decision as to whether any issue may adequately be presented for appellate review with a less-than-complete record is in the first instance for the trial judge, whose familiarity with all facets of the case is deserving of some deference.
If the issues are such that only by reference to a full and complete transcript may a reviewing court properly decide the case, then the Division of Youth and Family Services *119 will have to bear the cost thereof. With this last provision we emphasize that we do not go beyond the type of case before us, involving as it does a most sensitive area of basic human relations, and stress the fact that the procedure recommended herein is to be employed only because of the indigency of the applicant. We repeat our awareness of the general proposition that a full and complete transcript is desirable for appellate review. Where indigency is a factor in this type of case, however, and the grounds for appeal can be fully considered without a complete transcript, a reconstruction pursuant to the procedure set forth herein will provide the appellant and the reviewing court with an adequate record for appeal. Before resorting to this procedure and expending the time of the court and the money of the State and the parties, the trial court should determine (in addition to the issues referred to above) whether alternative means of financing the production of a complete transcript are available (including funds provided by the federal government, suggested as a possibility in Ms. Dotson's case in light of federal financing of legal services projects). In that way the balance between the appellant's need for a transcript on appeal and the State's interest in preservation and proper use of its resources will be suitably struck.
The judgment of the Appellate Division is:
Affirmed.
PASHMAN, J., concurring.
I join in Part I of the Court's opinion insofar as it affirms the Appellate Division and the trial court in granting Ms. Dotson's request for a free transcript for use on appeal. I am also substantially in accord with Part II, although I would suggest an additional method by which an indigent civil litigant might secure a full and complete transcript at public expense. If the trial judge determines that an appellant has meritorious grounds for appeal which cannot be adequately presented without the use of a verbatim record of the proceedings, and he further determines *120 that no alternative means of financing a transcript are available, I would suggest that he exercise his discretion by making available to the appellant a transcript which he has ordered for his own use under N.J.S.A. 2A:11-15.[1] I find nothing in that statutory provision which prevents such action, and I note that this Court followed a similar procedure in Stewart v. Stewart, 59 N.J. 301, 303 (1971). By adding this alternative procedure for creating a record for review, we would ensure that meritorious appeals involving significant private or public interests will not be aborted by R. 2:5-3.[2]
As to Part III of the Court's opinion, I would expand upon the observation that this type of proceeding is not an ordinary civil suit. It is, in the Court's words, "almost quasi-criminal in nature, since it seeks to terminate for cause all parental ties between the children here involved and their natural parents." Ante at 118. While I agree that this action is different because it involves "a most sensitive area of basic human relations," I think that it is incumbent upon the Court to acknowledge that the "special treatment" afforded to indigent parents is not a product of our grace, but is mandated by the due process and equal protection clauses of the Fourteenth Amendment. Both the trial judge and Judge Crane, concurring in the Appellate Division's result, based their decisions *121 explicitly on these constitutional grounds. The Court avoids those arguments by disposing of this case on its particular facts, stressing in particular the length of time which has elapsed since the initial determination and the prospects of further delay. However, in discussing the procedure to be followed in future proceedings of this character, the Court adheres to the steps outlined in Part II, thus endorsing the use of a truncated record unless the trial judge determines that the issues cannot be effectively presented without a full record. Ante at 118-119. Because I think it is plain that Ms. Dotson and similar defendants have a constitutional right to the same quality of appellate review ordinarily afforded non-indigent parties, I would require the Division of Youth and Family Services to bear the costs of transcribing the proceeding for the aggrieved parent, and dispense with the procedure suggested by the Court.[3]
I have two general criticisms of the Court's discussion in Part III. First, while the majority characterizes this type of case as quasi-criminal, it fails to elucidate upon this conclusion, thereby giving little guidance as to the propriety of a transcript in other proceedings. I find two similarities here between this type of charge and a criminal prosecution. Here, the State charges the defendant with conduct  failure to care properly for her children  which may be criminal, and which is viewed as morally wrong and reprehensible by society. See Meltzer v. C. Buck LeGraw Co., 402 U.S. 936, 960, 91 S.Ct. 1624, 1627, 29 L.Ed.2d 124, 127 (1971) *122 (Black, J., dissenting from denial of cert.). Moreover, while the accused parent does not stand to lose her personal freedom, the loss of her children abrogates a personal relation which is protected as a fundamental right under the Fourteenth Amendment. That a parent's interest in the companionship, care, custody and management of her children deserves special protection is beyond question. Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972). See May v. Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221, 1226 (1953); Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645, 652 (1944); Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045 (1923); State v. Perricone, 37 N.J. 463 (1962); cert. den. 371 U.S. 890, 83 S.Ct. 189, 9 L.Ed.2d 124 (1962); In re Guardianship of B.C.H., 128 N.J. Super. 402 (Law Div. 1974).
Significantly, other courts considering the parent-child relationship in the context of similar proceedings have almost unanimously proclaimed it to be a fundamental interest which calls into play constitutional notions of due process. State v. Jamison, 251 Or. 114, 444 P.2d 15, 17 (1968) (appointed counsel); Cleaver v. Wilcox, 40 U.S.L.W. 2658, 2659 (N.D. Cal. 1972) (otherwise unreported) rev'd on other grounds and remanded, 499 F.2d 940 (9 Cir.1974) (counsel); In re B., 30 N.Y.2d 352, 357, 334 N.Y.S.2d 133, 136, 285 N.E.2d 288, 290 (1972) (counsel); Danforth v. State Dept. of Health and Welfare, 303 A.2d 794, 796-797 (Me. Sup. Jud. Ct. 1973) (counsel); In Interest of Friesz, 190 Neb. 347, 208 N.W.2d 259, 260-261 (1973) (counsel); In re Adoption of R.I., 455 Pa. 29, 31, 312 A.2d 601, 602 (1973) (counsel); State ex rel. Lemaster v. Oakley, 203 S.E.2d 140, 143-144 (Sup. Ct. Appeals W. Va. 1974); In re Welfare of Luscier, 84 Wash.2d 135, 136-137, 524 P.2d 906, 907-908 (1974) (counsel); In re Rodriguez, 34 Cal. App.3d 510, 514, 110 Cal. Rptr. 56, 58 (Ct. App. 1974) (counsel). Contra, *123 Robinson v. Kaufman, 8 Cal. App.3d 783, 786, 87 Cal. Rptr. 678, 680 (Ct. App. 1970), cert. den. sub nom. Kaufman v. Carter, 402 U.S. 964, 91 S.Ct. 1624, 29 L.Ed.2d 128 (1971). Even in this State, indigent parents who are subjected to proceedings which may result in either temporary loss of custody or permanent loss of parental rights have a constitutional right to appointed counsel. Crist v. N.J. Div. Youth & Family Services, 135 N.J. Super. 573 (App. Div. 1975) rev'ing on other grounds 128 N.J. Super. 402 (Law Div. 1974).[4]
Second, the Court also chooses not to pursue the implications of characterizing this action as "quasi-criminal" for the purposes of a parent's application for a waiver of fees for a transcript. However, the logic of this analogy leads to the conclusion that a defendant in a proceeding brought under N.J.S.A. 30:4C-15 should be no more prejudiced by a procedural rule which undermines her right to appellate review than is a criminal defendant with similarly limited financial resources.
In the criminal setting, it has been a well established constitutional principle since Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed.2d 891 (1956) that a defendant may not be denied a right of appeal because of indigency. Williams v. Oklahoma City, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969); Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Douglas *124 v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961); Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959). While the due process clause has never been authoritatively interpreted to require a right to appellate review, even of criminal convictions, the United States Supreme Court has repeatedly held that the Fourteenth Amendment's equal protection clause forbids enforcement of procedural rules which prejudice a defendant who cannot afford to pay specified fees or charges. These rulings have been animated by the basic proposition stated in Griffin v. Illinois, supra:
There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.
[351 U.S. at 19, 76 S.Ct. at 591, 100 L.Ed. at 899]
Equal treatment does not compel a state to provide a transcript if other means can provide "adequate and effective appellate review," id., but these alternatives must be "as good as those available to a nonindigent defendant with similar contentions." Draper v. Washington, supra, 372 U.S. at 496, 83 S.Ct. at 779, 9 L.Ed.2d at 906.
In New Jersey an indigent criminal defendant is entitled to a free transcript by Court Rules, R. 2:5-3, and by statute, N.J.S.A. 2A:152-16, 17. See also N.J.S.A. 2A:158A-1 et seq.; Pressler, Current N.J. Court Rules, Comment R. 2:5-3. Moreover, at least one lower court has extended this right to indigents appealing from involuntary civil commitment orders. In re Minehan, 130 N.J. Super. 298 (Cty. Ct. 1974). See R. 4:74-7.
The majority's suggested procedures for composing a shortened record for indigent appellants is obviously calculated to satisfy the constitutional command that the State offer an *125 equivalent alternative to indigents if it decides not to provide a transcript at public expense. See Griffin v. Illinois, supra, 351 U.S. at 20, 76 S.Ct. at 591, 100 L.Ed. at 899; Eskridge v. Washington, State Board of Prison Terms and Paroles, 357 U.S. 214, 216, 78 S.Ct. 1061, 1062, 2 L.Ed. 2d 1269, 1271 (1958); Draper v. Washington, supra. However, I cannot agree that this distinction between litigants can be justified if it adversely affects a poor person's ability to secure full review of a proceeding in which she has been separated from her children. The equal protection clause guarantees an indigent defendant who is deprived of her children the same rights as a more prosperous defendant who can afford to pay the requisite fees. I do not view Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) or United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) as authority to the contrary; neither case supports a distinction between these classes of litigants. Indeed, in Ortwein, the Supreme Court noted that in Oregon special rights were given in cases terminating parental rights. Supra, 410 U.S. at 661, 93 S.Ct. at 1175, 34 L.Ed.2d at 577. And in Kras, the Court distinguished its earlier decision in Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) as having been based on the importance of the marital relationship. Supra, 409 U.S. at 444, 93 S.Ct. at 637, 34 L.Ed.2d at 635.[5]
I doubt that a truncated record can be truly satisfactory substitute for a transcript. The majority acknowledges "the general proposition" that a full *126 and complete transcript is "desirable" for appellate review. Ante at 119. When such serious issues are implicated, it is a virtual necessity in all but a handful of cases. A truncated version of the trial proceedings eliminates, or drastically curtails, an appellate court's ability to find "plain error." R. 2:10-2. See Hardy v. United States, 375 U.S. 277, 280, 84 S.Ct. 424, 427, 11 L.Ed.2d 331, 334 (1964). Additionally, the lack of a complete transcript inevitably hampers an advocate's preparation of grounds for appeal:
As any effective appellate advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law. Anything short of a complete transcript is incompatible with effective appellate advocacy.
[Hardy v. United States, supra, 375 U.S. at 288, 84 S.Ct. at 431, 11 L.Ed.2d at 339 (Goldberg, J., concurring)]
Even if the grounds of appeal present purely "legal" issues, our assessment of these issues will inevitably be colored by our consideration of the facts. Indeed, if certain contentions require a change in existing law, we would be unwise to take such a step without the benefit of a concrete set of facts against which to measure application of a new standard.
Lastly, I am skeptical that this alternative will represent a real saving in resources. In many cases the expense of transcribing the testimony will surely be less than the cost in the lawyers' and judge's time in reaching agreement on a shortened record. Furthermore, in other cases, there will still be a need for a transcript so that a reviewing court can determine whether a trial judge correctly found a litigant's grounds of appeal to be frivolous. See Lee v. Habib, supra, 424 F.2d at 904-905.
Therefore, I would direct trial judges to grant, on a showing of financial need, an indigent parent's request for *127 a waiver of fees for a transcript when he or she has lost the temporary or permanent custody of his or her children in a proceeding brought by the Division of Youth and Family Services. That determination should not be based upon a showing of non-frivolous grounds or nonlegal grounds of appeal. In these cases, poor people deserve no less than those who can afford to pay.
PASHMAN, J., concurring in the result.
For affirmance  Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD  7.
For reversal  None.
NOTES
[1] The matter properly should have been presented to this Court as a motion for leave to appeal pursuant to R. 2:2-2(b) as there was no "final judgment" in the Appellate Division. R. 2:12-3. Cf. R. 2:2-5. We consider our grant of certification as tantamount to the granting of a motion for leave to appeal.
[1] N.J.S.A. 2A:11-15 provides in pertinent part:

If the transcript is furnished to a judge of the court by his order, the reporter shall be paid therefor at the same rates, and such fees shall be paid for in the same manner and from the same sources as the reporter's salary or per diem fees are paid.
[2] I emphasize that the trial judge is not required to order a transcript to be furnished to him so that the litigants can use it on appeal. That decision is largely discretionary, and he should not grant a request for such action without conscientiously considering the importance of the interests at stake, the nature of the legal issues raised, and the likelihood that a non-indigent litigant would take an appeal under the same circumstances. This screening process should avoid unnecessarily protracted litigation. Cf. Lee v. Habib, 137 U.S. App. D.C. 403, 424 F.2d 891, 904 n. 59 (D.C. Cir.1970).
[3] While the majority fails to state whether the Division of Youth and Family Services is constitutionally required to provide a complete transcript when it is necessary for an effective appeal, its reasoning points in that direction. It emphasizes that its order to the agency is based on the importance of that parent's interest (due process) and the indigency of the parent (equal protection). Ante at 119. However, I note that N.J.S.A. 30:4C-30, which authorizes the payment of expenses incurred in the institution and maintenance of proceedings begun by the Division of Youth and Family services under N.J.S.A. 30:4C-15, provides a statutory foundation for the Court's decision as well.
[4] The Appellate Division reversed the trial court's holding that the Division of Youth and Family Services must compensate assigned counsel for indigent parents, finding that N.J.S.A. 30:46-1 et seq. did not provide for such payments. Under its decision, assigned counsel are to serve without pay. Supra, 135 N.J. Super. at 575. While N.J.S.A. 9:6-8.23 et seq. now requires the Office of the Public Defender to represent parents and guardians in proceedings brought by the Division of Youth & Family Services alleging child abuse or neglect, the Appellate Division in Crist noted that the Public Defender had not yet undertaken that task. Id., at 576-577 and n. 2.
[5] The Supreme Court underlined the special status of rights associated with marriage and family life in explaining its prior applications of the irrebuttable presumption doctrine in Weinberger v. Salfi, 422 U.S. 749, 771, 95 S.Ct. 2457, 2469-2470, 45 L.Ed.2d 522, 542 (1975). There it distinguished Stanley v. Illinois, supra, and Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) because the challenged legislative classifications burdened these fundamental interests.