593 A.2d 398

IN THE MATTER OF THE GUARDIANSHIP
OF B.L.N., L.M.N., J.A.M.N. AND C.L.M.

Superior Court of New Jersey
Chancery Division Gloucester County
Family Part

Argued October 4, 1990—Decided April 11, 1991.

114

*James P. Gentile,* Deputy Attorney General, Attorney for New Jersey Division of Youth and Family Services.

*Sean Dalton,* Esquire, Attorney for Defendant Donald Miller.

*Peter J. Cohen,* Esquire, Attorney for Defendant Charles Nitowski.

*Mary Beth Kramer,* Law Guardian for B.L.N., L.M.N., J.A.M.N., C.L.M.

*Bruce C. Hasbrouck,* Attorney for County of Gloucester.

LINDSAY, J.S.C.

The question presented is: In a termination of parental rights trial, does an indigent defendant who has been assigned counsel have the right, at public expense, to the services of a psycholo-

gist to aid his counsel in his defense as well as to have a psychological evaluation for the purpose of trial?

Since the State engages psychological and psychiatric experts to testify on its behalf, it is reasonable that the defendant should have the same right. Who should pay for it is another matter.

The Division of Family Services has traditionally paid for such examination on the agreement that the results will be available even if the expert is not called to testify by the defendant and that the Division can call him as its own witness. There is no authority in the statutes *per se* to require payment by D.Y.F.S.

In preparing such defense, any trial counsel needs the exam to guide him. He has to be able to consult with the examiner and decide whether he wants to call him as a witness.

The question is who should be required to pay for it. The County has been made a party and appeared in opposition to the motion to compel payment.

There are no statutes or rules directly on point for defense costs, other than counsel fees, to be covered at public expense in non-criminal cases.

"Inherent power is vested in court to require that counsel and scientific tests be provided indigent defendant without costs.." *M. on behalf of T., a minor v. S.,* 169 *N.J.Super.* 209, 404 *A*.2d 653 (Law.Div.1979).

Before we had a public defender program, the County's responsibility was not only to indigents accused of criminal offenses, but to indigents in general. *Lurry v. Mills,* 152 *N.J.Super.* 127, 377 *A*.2d 804 (Co.1977); *State v. Horton,* 34 *N.J.* 518, 170 *A*.2d 1 (1961).

The possibility exists that, by ordering the County to cover these types of defense costs, the floodgates will be opened for unanticipated litigation. Due to the increasing number of indigents entering into the justice system as litigants and a faltering economy, the problem will arise over and over again until

concrete laws and rules are set up by the Legislature and the courts.

In criminal cases the Court has the authority to permit assigned counsel to retain a toxicologist at the expense of the County. *State v. Williams*, 46 *N.J.* 427, 217 *A.*2d 609 (1966). Prior to the establishment of the Public Defender's office, attorneys were traditionally assigned to represent pro bono any indigent criminal defendant, but the Supreme Court would not require members of the bar to absorb full cost of defense of indigents. The County had the responsibility to meet the cost of criminal prosecutions, including the expense of providing counsel for indigent accuseds. *State v. Rush*, 46 *N.J.* 399, 217 *A.*2d 441 (1966).

The Public Defender's office was created by legislation in 1967. This relieved the counties of the financial obligation for the defense of accused individuals in criminal matters and placed the burden on a centrally administered agency of the State.

Termination of parental rights is generally considered a civil action, not criminal, and therefore is not the province of the Public Defender. However, termination of parental rights has been described as quasi-criminal: see *In re Guardianship of Dotson*, 72 *N.J.* 112, 367 *A.*2d 1160 (1976) where in a guardianship action the Supreme Court said,

> "We focus now on the specific type of proceeding before us. It presents circumstances of an unusual character. While it is denominated a civil matter, it is almost quasi-criminal in nature, since it seeks to terminate for cause all parental ties between the children here involved and their natural parents. It is not the ordinary civil suit where, except for the possible waiving of filing fees, the parties are left to their own resources in the litigation they pursue. As such, it is deserving of special treatment."

Quasi-criminal matters can use the criminal standards as a guide. Drunk driving is not a criminal charge; however, it is quasi-criminal, that is, criminal in nature. In such a case,

> "Constitutional obligation to furnish counsel to an indigent can sensibly only be construed to include as well that which is necessary to proper defense in

addition to the time and professional efforts of an attorney, and court has inherent power to require that such be provided at public expense.

"In prosecution for driving automobile while intoxicated, indigent defendant may be entitled to the appointment of an expert witness at public expense.

"Before requiring that expert services be supplied to defendant at public expense it must be established that the requested services are necessary for an adequate defense and that the defendant is in fact indigent." *State v. Ryan,* 133 *N.J.Super.* 1, 334 *A.*2d 402 (Co.1975).

I conclude therefore that in this termination case the indigent defendant is entitled to assigned counsel and is entitled to have the County pay for the expert necessary to assist the defendant to prepare his defense.

I specifically find that in this case it is necessary that the attorneys have the services of a psychologist for the purposes indicated. Each application must be considered individually and it is the responsibility of the movant to establish the need for such services.

■ The remaining question is whether defendants are in fact indigent. The Court has appointed individual counsel to each of the defendants upon their individual applications. Many times in practice, courts appoint local attorneys to serve *pro bono* in termination of parental rights cases. Perhaps that is laxity by the court in accepting a request for such appointment without an exhaustive inquiry into the financial need; perhaps the courts take advantage of "volunteer" attorneys because they so graciously accept such appointments; perhaps everyone considers the taking of children from their parents is such a grievous and final solution that everyone wants to help. However, to require the public to pay the expense of other professionals (whom the Court cannot order to "volunteer") the Court must clearly be convinced that there is financial need.

■ During the trial the defendants have married. I'm satisfied that the defendant Mr. Miller, father of two of the children, is gainfully employed and can afford to supplement his own defense by retaining his own expert to assist his assigned counsel. The mother, however, is not employed and cannot

118

afford to contribute anything.  All four of the children are hers and two of them are not the children of the defendant Miller.  I direct the County of Gloucester to pay for the expert necessary for Mrs. Nitowski's (now Miller) counsel to prepare a proper defense.