170 N.J. Super. 320 (1979)
406 A.2d 468
IN THE MATTER OF THE ADOPTION OF TWO CHILDREN BY A.M. AND L.M.
Superior Court of New Jersey, Appellate Division.
Argued March 5, 1979.
Decided August 17, 1979.
*322 Before Judges ALLCORN, SEIDMAN and BOTTER.
Mr. Richard J. Bennett, Middlesex County Legal Services Corporation, argued the cause for appellants  natural parents J.B. and P.B.
Mr. Dennis J. Cummins, Jr., argued the cause for respondents A.M. and L.M.
Ms. Erminie L. Conley, Assistant Attorney General, argued the cause for Division of Youth and Family Services (Mr. John J. *323 Degnan, Attorney General of New Jersey, attorney; Mr. Richard S. Weiner, Deputy Attorney General, on the memorandum).
The opinion of the court was delivered by SEIDMAN, J.A.D.
At issue in this matter is the propriety of a judgment entered in the Middlesex County Court for the adoption of two children by A.M. and L.M., with whom the children had been placed by the Division of Youth and Family Services (DYFS) as foster parents pursuant to an order issued by the Middlesex County Juvenile and Domestic Relations Court in a proceeding under N.J.S.A. 30:4C-12. The natural parents, who had vigorously contested the adoption, appealed from the judgment.
Claiming that they could not afford the cost of furnishing transcripts of the 16-day hearing or to pay the required deposit of $3,200, the natural parents sought from this court an order for a transcript to be prepared at public expense under R. 2:5-3(d). The motion was denied without prejudice to an application for that purpose to the trial court. The natural parents moved before the Supreme Court for leave to appeal. The motion was granted only to the extent of directing acceleration of the appeal and ordering prompt application to the trial court for the transcript. After a hearing on that issue the trial judge ordered DYFS to provide funds for the deposit for and payment of the full cost of the transcript, with reimbursement to be made by the children's natural father at the rate of $25 a month. DYFS appealed from this order. We stayed the order pending our determination of this aspect of the appeal.
In the course of the several motions made before us the natural parents questioned whether the County Court had "jurisdiction" to entertain the complaint for adoption in view of the purpose for which the children had been placed with the adoptive parents and the pending proceedings in the Juvenile and Domestic Relations Court. Although the point was not raised below, we deemed it of sufficient importance to be noticed as *324 plain error under R. 2:10-2. We also were of the view that if the issue were to be resolved in favor of the natural parents, the need for a transcript of the adoption proceedings would be rendered moot. Accordingly, we directed the filing of briefs on the indicated limited issue and heard it on an accelerated basis. For reasons that follow, we determine that the judgment of adoption should be reversed and the matter remanded to the Middlesex County Juvenile and Domestic Relations Court for such further proceedings as may be appropriate.
DYFS filed a "Complaint for Protective Services" in the Middlesex County Juvenile and Domestic Relations Court on May 9, 1975. It recited the hospitalization of the children's mother because of a severe mental problem, the alcoholism of their father, and alleged mistreatment of and other improper, abusive and indecent conduct toward the children, who were then, respectively, two and six years of age. The complaint stated that although the parents had agreed in January to the voluntary placement of the children in foster care, they had now "refuse[d] to voluntarily have their children placed out of their home." Judgment was sought placing the children "in the care and supervision of the New Jersey Division of Youth and Family Services, including authorization to assume physical custody and authorization to consent to emergency medical treatment." It appears that the complaint was filed pursuant to N.J.S.A. 30:4C-12, which enables DYFS, in an appropriate case,[1] to apply *325 to the Juvenile and Domestic Relations Court of the county in which the child resides for an order making the child a ward of the court and placing such child under the care and supervision of DYFS. By order dated May 9, 1975 the two children were "made wards of this court and placed in the physical custody of [DYFS] pending hearing on the Complaint in this matter." The parents were ordered to show cause why the custody of the children in DYFS "should not continue pursuant to N.J.S.A. 30:4C-12 for a period of six months."[2] On the same day DYFS placed the children with A.M. and L.M. as foster parents.[3] See N.J.S.A. 30:4C-26. While the record before us does not reflect what, if anything, occurred on the return day, it appears that a hearing took place in October 1975 at which the parents were present, as well as their attorneys and a representative of DYFS. A consent order was entered "grant[ing] the care, custody and supervision of the infants * * * for a period of six months commencing from the date of this order pursuant to N.J.S.A. 30:4C-12 * * *," and allowing the parents separate visitation with the infants at least once a month under the supervision of DYFS. In August 1976, on motion of DYFS, the court ordered a psychiatric evaluation of the children's father. The hearing was continued to a date to be fixed by the court upon receipt of the evaluation. The court further ordered that the children remain "in the care, custody and supervision" of DYFS, and directed it to "make reasonable efforts to increase visitation" between the parents and the infants.
*326 Thereafter, but while the foregoing proceedings were still pending in the Juvenile and Domestic Relations Court, A.M. and L.M. filed a complaint in the Middlesex County Court, Probate Division, for the adoption of the two children. The complaint set forth, among other things, that the children had been under the continuous care of plaintiffs since May 9, 1975, "at which time the said children were placed with the Plaintiffs by the Department of Institutions and Agencies, Division of Youth and Family Services." The record does not indicate that the County Court judge was informed of the pending matter in the Juvenile and Domestic Relations Court, or that DYFS had knowledge of the filing of the adoption complaint. In any case, an order was entered in the County Court making the children sought to be adopted the wards of that court, designating the Catholic Welfare Bureau of Trenton to investigate and report to the court, and fixing March 25, 1977 as the date for hearing. The natural parents filed an answer to the complaint opposing the adoption.
It is to be noted that throughout this period and thereafter there was considerable activity in connection with the Juvenile and Domestic Relations Court proceedings. On January 31, 1977 the children were ordered to "be produced for simultaneous [psychiatric] examination with the natural father and natural mother."[4] A report was issued in May by the Rutgers Medical School Community Mental Health Center, Early Prevention Program, with respect to the relationship between the children and their natural parents. A dispute arose between the parents and DYFS, the former charging the Division "with instilling fear and depression in the children in an attempt to bolster the foster parents action for adoption." In May (without any indication *327 of an awareness of the adoption action) the Juvenile and Domestic Relations Court directed that "reasonable visitation, twice a month," take place elsewhere than at the foster home under the supervision of DYFS. On July 5, 1977, on DYFS' motion, the court ordered "a gradual return of the infants * * to the custody of the defendants [natural parents], * * * to be accomplished gradually by increasing visits and contacts with defendants, which return will be completed by mid-August, 1977." The parents and the children were ordered to attend family therapy sessions, DYFS agreed to supply a homemaker to assist the natural mother, and DYFS undertook to supervise the parents and the children until the further order of the court, "which at the request of the Division of Youth and Family Services shall not exceed six (6) months."
The foster parents obtained from the Middlesex County Court an order dated July 14, 1977, directing the natural parents and DYFS to show cause why an interlocutory injunction should not be issued restraining them from removing the children from the foster home. A temporary restraint was ordered pending the return of the order to show cause. By order dated July 22, 1977 the restraint was continued, "physical custody" of the children was placed with A.M. and L.M., the natural parents were permitted visitation and the matter was set down for trial.
The adoption hearing was held in November and December 1977. By order dated February 10, 1978 the rights of the natural parents were terminated and a final hearing date was fixed for April 28, 1978. Judgment of adoption was entered on May 9, 1978, and this appeal followed.
We have recited the history in detail in order to highlight the procedural and substantive problems affecting the adoption proceedings from the time of their inception. First and foremost is the plain fact that DYFS did not place the children in question with A.M. and L.M. for adoption and could not legally have done so at the time.
*328 It is thoroughly clear that N.J.S.A. 30:4C-12 contemplates no more than a temporary separation of a child from its natural parents. The fact that the six-month limitation upon the duration of the court order may be extended, as was done here, does not alter the temporary nature of the proceeding. Also evident is the limited scope of DYFS' responsibility under that section of the statute with regard to the affected child: it is care and supervision. As we said in In re Guardianship of B.C.H., 108 N.J. Super. 531, 537 (App.Div. 1970), the statute, N.J.S.A. 30:4C-1 et seq., is to be administered strictly in accordance with the general principle that the preservation and strengthening of family life is a matter of public concern as being in the interest of the general welfare of the child. In the instant case the proceedings in Juvenile and Domestic Relations Court were intended to implement that purpose and were designed to bring about a favorable climate for the ultimate restoration of the children to their natural parents.
DYFS is authorized by N.J.S.A. 30:4C-26 et seq. to place a child in a foster home whenever the circumstances of the child are such that his or her needs cannot be adequately met at home. Such was the case here. But the placement, without more, did not give the foster parents the right to seek to adopt the children entrusted to them. They accepted the children with full knowledge that the placement was for the purpose of providing a foster home and not for adoption. See N.J.S.A. 30:4C-2(h), n. 3, supra; cf. W.C. v. P.M., 155 N.J. Super. 555, 564 (App.Div. 1978), certif. den. 75 N.J. 606 (1978). Foster care is designed as a "temporary palliative to care for children whose parents are unable to do so for one or more reasons." Id. at 565.
* * * To surround a foster parent with greater rights than those contemplated by the legislative system would permit them to interfere with the delegated function of the Division and the paramount right of the parent to the reentry of the children into the natural family unit. * * * Such an approach would also obliterate the well-settled dichotomy in the legislative system of our State *329 between the placement of a child for adoption and the placement for foster care. See N.J.S.A. 30:4C-26.4. In the former the parties know and expect the termination of parental rights. In the latter the parties know and expect temporary placement looking toward return of the children to the natural parent. [155 N.J. Super. at 565-566]
This does not mean that foster parents are forever precluded from adopting a child placed in their care. See N.J.S.A. 30:4C-26.5. In fact, N.J.S.A. 30:4C-26.7 provides:
Any husband and wife, who, as foster parents, have cared for a child continuously for a period of 2 years or more, may apply to the Bureau of Childrens Services [DYFS] for the placement of said child with them for the purpose of adoption and if said child is eligible for adoption, the bureau shall give preference and first consideration to their application over all other applications for adoption placements. [Emphasis supplied]
Here, however, the foster parents took matters into their own hands in complete disregard of the statute and of the specific and limited purpose of the placement. When the adoption complaint was filed, the children had been with the foster parents less than two years. The foster parents were duty bound either not to have filed the complaint at all at that time or, at the very least, to have disclosed to the County Court all the relevant facts which, if made known to that court, would unquestionably have raised at once the issue of whether the complaint could be maintained.
DYFS agrees that foster parents are not free to pursue their own independent adoption action; that to sanction such action would be to ignore "the distinction between legal and physical custody." But DYFS goes on to argue that "where although guardianship may not have been obtained but the Division has determined that the parental rights of the natural parents should be terminated and that the foster parents would be appropriate adoptive parents, there, too, the foster parents could pursue an adoption action." The Division's concept seems to be that since it has the statutory right and duty to determine whether, in an appropriate case, parental rights should be terminated, once it has made that determination, then how those *330 rights are terminated, i.e., whether in a guardianship action or an adoption proceeding by foster parents upon the Division's consent, should be irrelevant. We cannot agree. DYFS' notion of its power and authority in this regard is mistaken. The mere conclusion by DYFS that parental rights ought to be terminated does not per se entitle it to authorize or approve the institution of adoption proceedings by the foster parents.
Beyond this, it is clear that prior to October 1977 DYFS had moved actively for the return of the children to their natural parents and, if it was aware of the pending adoption proceedings, had not expressed approval thereof. In October DYFS addressed a letter to the Attorney General recommending that the adoption application be supported because it would serve the best interests of the children. The letter further noted:
This might seem to reverse the Division's position of June, 1977 in which affirmative steps were taken for the return of the children to their natural parents. Those events were based on the belief that there had been significant improvement in Mrs. B----'s mental health and that the "preponderance of the evidence" did not support the Division's obtaining permanent custody or guardianship.
However, recent psychological evaluations and reports completed in August, 1977 underscore the chronic nature and severity of Mr. and Mrs. B----s' individual and marital problems.
DYFS' action in this regard is incomprehensible. With full knowledge of the pending proceedings in the Juvenile and Domestic Relations Court and, particularly, of the order of that court dated July 5, 1977, entered on DYFS' own application, under which the return of the children was to be effected by mid-August, DYFS chose nevertheless to ignore completely that court and its order and to advance a contrary position in another court.
If changed circumstances caused DYFS to believe that the best interests of the children required the termination of *331 parental rights and the placement of the children under proper guardianship, it should have filed a petition with the county Juvenile and Domestic Relations Court under N.J.S.A. 30:4C-15 et seq. In this regard, it should be noted that DYFS is a supervising arm of the State, rather than "an approved agency" as specified in N.J.S.A. 9:2-18. See In re Guardianship of R.G. and M.G., 106 N.J. Super. 262, 264 (App.Div. 1969). If the court, in such proceeding, determined after a hearing that such guardianship was required, an order would have been made terminating parental rights and committing the children to the guardianship and control of DYFS, in which case the Division would have become the legal guardian of the children for all purposes, including placement for adoption. N.J.S.A. 30:4C-20. Absent such order, DYFS lacked legal authority in our view either to place the children for adoption, see N.J.S.A. 9:3-19, or to consent to their adoption by the foster parents.
Insofar as the County Court is concerned, over and above the matter of DYFS' lack of authority to place the children for adoption and the foster parents' disability to seek to adopt them prior to the expiration of the two-year period, the issue is whether the court should have permitted the action to go forward in light of the pending proceedings involving the children in a coordinate court. We are convinced that it should not have done so. As we indicated earlier, the Juvenile and Domestic Relations Court, pursuant to statutory authority, had assumed jurisdiction of the matter, made the children wards of the court, and vested in DYFS their care and supervision, all with a view to the ultimate return of the children to their parents, as is the implicit import of N.J.S.A. 30:4C-12. Yet, upon the filing of the adoption complaint, the County Court made the children its wards, thus creating the anomalous situation of two courts proceeding in diametrically opposed directions with respect to the same children. Quite apart from the question of eligibility *332 of the foster parents as temporary caretakers to adopt the children, or the childrens' eligibility to be adopted at the time, the County Court should have deferred to the coordinate court which had already assumed jurisdiction and was actively engaged in overseeing a rehabilitative program designed to restore the children to their parents. This course would have followed the statutory scheme. N.J.S.A. 30:4C-12.
We are also of the view that the injunctive order issued by the County Court in July 1977 infringed upon a valid, subsisting order of another court. Despite the latter, the County Court restrained DYFS from removing the children from the foster home, continued "physical custody" of the children in the foster parents and granted the natural parents visitation rights. In effect, the County Court by its order overrode and superseded that of the Juvenile and Domestic Relations Court. We are aware of no statute, rule or case law permitting it to do so.
We are thus satisfied that the judgment of adoption must be reversed. But this does not end the matter, for we cannot overlook the length of time that the children have been with the foster parents and the possibility of psychological injury to them if their status were to be altered at this time. Cf. Sorentino v. Family & Children's Soc. of Elizabeth, 72 N.J. 127, 131 (1976). Paramount consideration must be given to their best interests and welfare. At the same time, we must also take into account the rights of the natural parents and make certain that they are not improperly deprived of their children, bearing in mind the outstanding, still pending order of the Juvenile and Domestic Relations Court. Accordingly, we deem it advisable to restore the matter to its status on July 5, 1977 and, to that end, to remand the matter to the Juvenile and Domestic Relations Court for further proceedings.[5] DYFS or the foster parents *333 may file a petition with that court under N.J.S.A. 30:4C-15 for a determination of whether, because of changed circumstances, parental rights should be terminated and the children committed to the guardianship of DYFS. The natural parents, of course, may be heard in opposition thereto and on whether their children should be returned in implementation of the order dated July 5, 1977. We are not to be understood as indicating any view as to how these issues should be resolved. Pending further proceedings the children shall remain under the care and supervision of DYFS and in the foster home where they now reside. The question of visitation by the natural parents we leave to the sound discretion of the judge below. The Juvenile and Domestic Relations Court shall proceed as expeditiously as possible in order to make a determination of all issues at the earliest practicable date.
The judgment under review is reversed. The matter is remanded to the Middlesex County Juvenile and Domestic Relations Court for further proceedings consistent with the foregoing. Jurisdiction is not retained. No costs.
NOTES
[1] This section of the statute provides that any person or agency interested in a child may file a complaint with DYFS

* * * [w]henever it shall appear that the parent or parents, guardian, or person having custody and control of any child within this State is grossly immoral or unfit to be entrusted with the care and education of such child * * *
Upon receipt of such complaint DYFS conducts an investigation, and if it then appears that the child requires care and supervision, DYFS may apply to the juvenile and domestic relations court for an order "making the child a ward of the court and placing such child under the care and supervision of [DYFS]." In this case, although DYFS assumed actual physical control of the children, there is no doubt whatever that the proceeding instituted by DYFS was under N.J.S.A. 30:4C-12.
[2] N.J.S.A. 30:4C-12 provides that such order "shall not be effective beyond a period of 6 months from the date of entry unless the court, upon application by [DYFS], at a summary hearing held upon notice to the parent, parents, guardian, or person having custody of the child, extends the time of the order."
[3] "Foster parent" is defined in N.J.S.A. 30:4C-2(h) as "any person other than a natural or adoptive parent with whom a child in the care, custody or guardianship of the Division of Youth and Family Services is placed by said division or with its approval, for temporary or long-term care, but shall not include any persons with whom a child is placed for the purpose of adoption."
[4] Those appearing in court at that time were the attorney for the natural father, a deputy attorney general appearing for DYFS, and a representative of the office of the Public Defender (designated by the court as "Law Guardian" to represent the infants).
[5] We express no opinion on the applicability of the Child Placement Review Act, N.J.S.A. 30:4C-50, which took effect October 1, 1978. The matter is one to be resolved by the trial judge.