571 A.2d 1295

NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF, v. D.C. AND M.C., DEFENDANTS, (IN THE INTEREST OF JOEL C. RINSKY, ESQ., AND JANET B. ROMANO, ESQ.), APPLICANTS–APPELLANTS, AND IN THE MATTER OF C. MINORS, MINORS.

(IN THE INTEREST OF J. PATRICK ROCHE, ESQ.), APPLICANT–APPELLANT.

Argued September 26, 1988—Decided April 5, 1990.

390

*Joel C. Rinsky* argued the cause for appellants.

*Thomas P. Hartley,* Assistant Deputy Public Defender, argued the cause for respondent Office of the Public Defender, Law Guardian Program (*Alfred A. Slocum, Jr.,* Public Defender, attorney).

*Barbara A. Harned,* Deputy Attorney General, argued the cause for respondent Department of Law and Public Safety (*Cary Edwards,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

*Mark H. Sobel* argued the cause for *amicus curiae,* New Jersey State Bar Association (*Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein,* attorneys).

PER CURIAM.

This appeal poses the issue of compensation for attorneys appointed to represent indigent parents and their minor children in actions by the Division of Youth and Family Services (DYFS) for termination of parental rights under *N.J.S.A.* 30:4C–11 to –24. Appellants ask us to determine that the fees for their services as appointed counsel in a Title 30 case are compensable and legally payable. The two terms have different implications. The fees are "compensable" if appellants have the substantive right to be paid. They are "legally payable," however, only if the legislature has appropriated funds to pay appointed attorneys in Title 30 actions or if this Court has the constitutional authority to compel the State to pay them. *See Amantia v. Cantwell,* 89 *N.J.Super.* 7, 213 *A.*2d 251 (App.Div.1965).

I

In 1975 DYFS filed a protective-services complaint under *N.J.S.A.* 9:6–8.21 to –8.73 and *N.J.S.A.* 30:4C–12 against D.C. and M.C., the parents of three minors. DYFS alleged child abuse and neglect, but did not seek termination of parental rights. The Office of the Public Defender appointed pool attorneys to represent D.C. and M.C., and named a public defender to represent the children. After convicting D.C. for abuse and M.C. for neglect, the Juvenile and Domestic Relations Court conditionally released the children to M.C.

The court reviewed the case periodically. Under the terms of Title 9, D.C. and M.C. received the assistance of paid counsel to litigate visitation issues. On several occasions the court placed the children outside the home. In 1983 DYFS filed a separate suit under *N.J.S.A.* 30:4C–15 against D.C. and M.C. to termi-

nate their parental rights. Pursuant to *Rule* 5:3–4(a), the trial court appointed appellants Joel C. Rinsky and Janet B. Romano to represent D.C. and M.C. The court also named appellant J. Patrick Roche to represent the three children.

After eighteen days of bench trial, the trial court terminated the parental rights of D.C. and M.C. in respect of one child, who was then committed to the guardianship of DYFS. The trial court did not terminate the parental rights as to the other two children. The court ordered DYFS to maintain temporary legal and physical custody over one of them. The third was to remain in the legal custody of DYFS but in the physical custody of his parents. No one appealed that judgment.

Appellants moved to compel the Public Advocate or Attorney General to pay their fees. Finding no source of funds available for that purpose, the trial court denied the motion. The Appellate Division vacated the order and remanded, with instructions to the trial court to distinguish between services that are statutorily compensable and payable and those that are compensable but not payable. The Appellate Division denied the Attorney General's motion for reconsideration.

The trial court thereupon ordered the Attorney General and the Public Advocate to show cause why the appellants should not be compensated. After the parties had filed certifications in lieu of testimony, the trial court determined that a law guardian in a Title 30 action has duties similar to those of an attorney in a Title 9 action. Because Title 9 lawyers are paid, the trial court believed that Title 30 attorneys should also be compensated. It held, however, that it could not order payment of the fees in the absence of funds authorized by the legislature for that purpose.

On the attorneys' appeal the Appellate Division held that the fees are neither compensable nor payable. 219 *N.J.Super.* 644, 663, 530 *A.*2d 1309 (1987). The court did not believe that the similarities between the duties of Title 9 and Title 30 attorneys override the distinction made by the legislature between these

statutory schemes. The Appellate Division concluded that without statutory authorization, it could not conclude that the fees were compensable and payable.

We granted certification to review that determination. 110 *N.J.* 312, 540 *A.*2d 1289 (1988). Appellants and *amicus curiae,* New Jersey State Bar Association, make three arguments for payment: it is statutorily authorized; it is required by *State v. Rush,* 46 *N.J.* 399, 217 *A.*2d 441 (1966); and it is constitutionally compelled.

## II

### A.

We first consider whether the legislature has provided for the payment of appointed attorneys in parental-rights-termination cases. *N.J.S.A.* 9:6–8.21 to –8.73 and *N.J.S.A.* 30:4C–11 to –24 both deal with parent-child relationships. Title 9, chapter 6, provides temporary remedies for child-abuse problems. DYFS, among others, can file a complaint alleging that a child has been abused or neglected. *N.J.S.A.* 9:6–8.33 and –8.34. Pursuant to a finding of abuse or neglect, a "court may place the child in the custody of a relative or other suitable person or [DYFS]." *N.J.S.A.* 9:6–8.54a. The initial placement can be for a period of eighteen months, which the court can extend for one-year periods. *N.J.S.A.* 9:6–8.54b.

Similarly, *N.J.S.A.* 30:4C–12 allows the Bureau of Childrens [sic] Services (now DYFS) to seek temporary custody of a child. That provision authorizes DYFS to investigate a wide range of allegations against parents and other custodians and to file suit for the care and supervision of the child. The statute provides for a "best interests" adjudication granting DYFS care and supervision for six months. After further hearings the court can extend that period.

*N.J.S.A.* 30:4C–15 to –24 differs from both *N.J.S.A.* 30:4C–12 and *N.J.S.A.* 9:6–8.21 to –8.73 in that it provides for a

permanent remedy: termination of parental rights and placement of the child under the guardianship of DYFS. Whereas temporary remedies deprive parents of custody only, leaving the extent of parental visitation for further adjudication, a successful guardianship action under *N.J.S.A.* 30:4C–15 to –24 necessarily entails a cessation of visitation. That path leads to freeing the child for adoption. *N.J.S.A.* 30:4C–20. Title 30 does not provide for counsel for indigent parties. Nevertheless, "[s]imple justice" dictates that parents have a right to representation in such cases. *Crist v. New Jersey Div. of Youth & Family Serv.*, 135 *N.J.Super.* 573, 575, 343 *A.*2d 815 (App.Div. 1975).

The focus of the instant controversy is the absence of any provision in Title 30, chapter 4C, authorizing public payment of appointed counsel. That omission contrasts with the provisions for compensated legal representation for both the parents and the child in actions filed under Title 9, chapter 6. *N.J.S.A.* 9:6–8.43a provides that indigent parents may apply for an attorney through the Department of the Public Advocate. *N.J. S.A.* 9:6–8.23a requires the appointment of a law guardian to represent a minor in a Title 9, chapter 6, action.

### B.

■ Absent a contract with the client, a court generally cannot award a fee to an attorney unless authorized by statute or Rule of Court. *Klacik v. Kovacs*, 111 *N.J.Super.* 307, 311–12, 268 *A.*2d 305 (App.Div.1970); *Cohen v. Fair Lawn Dairies*, 86 *N.J.Super.* 206, 212, 206 *A.*2d 585 (App.Div.), *aff'd*, 44 *N.J.* 450, 210 *A.*2d 73 (1965); *R.* 4:42–9(a). The court in *Crist* determined that without a Court Rule or statute authorizing payment of counsel, appointed attorneys in Title 30 actions would have to provide their services free of charge. 135 *N.J.Super.* at 575, 343 *A.*2d 815.

■ Appellants intertwine Title 30 and Title 9 actions in an attempt to find statutory authorization for attorneys' fees.

They contend that because DYFS could have brought the underlying case pursuant to Title 9 rather than Title 30, compensation is warranted. DYFS, however, could not have initiated the suit under *N.J.S.A.* 9:6–8.21 to –8.73 because none of those sections provides for the termination of parental rights. Nor could DYFS have brought the action pursuant to *N.J.S.A.* 9:2–18, which allows "approved agenc[ies]" to seek termination of parental rights. DYFS is not an "approved agency" as defined in *N.J.S.A.* 9:2–13(a), but rather a "supervisory arm of the State * * *." *In re Adoption of Two Children by A.M. and L.M.*, 170 *N.J.Super.* 320, 331, 406 *A.*2d 468 (App.Div.1979); *In re Guardianship of R.G. and M.G.*, 106 *N.J.Super.* 262, 264, 255 *A.*2d 284 (App.Div.1969). In seeking to terminate the parental rights of D.C. and M.C., DYFS could act only under *N.J.S.A.* 30:4C–15. We agree with the Appellate Division that appellants' argument that DYFS arbitrarily proceeded under Title 30 to avoid compensating the appellants is "utterly without merit." 219 *N.J.Super.* at 657, 530 *A.*2d 1309.

■ Appellants also argue that because Title 30 actions often involve visitation questions, the legal services provided are analogous to those under Title 9 and therefore should similarly be compensated. But as the court below observed, "[t]he existence of visitation issues cannot obscure the fact that the action was instituted under [Title 30] to terminate parental rights." 219 *N.J.Super.* at 657, 530 *A.*2d 1309. According to the Attorney General, Title 9 proceedings can go on for years. Title 30 actions, on the other hand, are normally limited to no more than two or three days. If parental rights are terminated, that is the end of the matter. There are no recurring, drawn-out visitation issues.

■ The appellants' position would extend the compensation provisions of a narrowly-drawn statute to any custody case involving a guardian *ad litem.* There is no indication that the legislature intended *N.J.S.A.* 9:6–8.23a and –8.43a to have such wide-ranging effect. Title 9 has a statutory requirement for

payment of counsel; Title 30 does not. We find no statutory authorization for the compensation of appointed attorneys in Title 30 actions.

## III

We turn to the argument that we should expand the sweep of this Court's holding in *State v. Rush, supra,* 46 *N.J.* 399, 217 *A.*2d 441. That case addressed the issue of whether appointed attorneys in criminal cases should be compensated. At the time of that decision in 1966 the statute authorizing compensation applied only to murder cases; attorneys assigned to represent indigent criminal defendants in non-murder cases served without compensation.

The *Rush* Court applied a three-part inquiry to determine whether to order the compensation of appointed counsel in non-murder criminal cases:

(A) whether the judiciary has the authority to deal with the subject; (B) if it does, whether that relief should be ordered; and (C) whether authority presently exists for payment by the county or some agent of the State. [46 *N.J.* at 409, 217 *A.*2d 441.]

After answering the first two questions affirmatively, the Court considered whether the legislature had set aside funds for compensation. It found such authorization in *N.J.S.A.* 2A:158–7, which instructs the county treasurer to pay "[a]ll necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders against the laws," even in excess of the sums appropriated if authorized by the assignment judge. *Id.* at 414, 217 *A.*2d 441. The Court determined that the costs of providing counsel for indigent defendants fall within the ambit of "necessary expenses." *Ibid.*

 Our disposition of that third question, whether there is authority for payment, makes consideration of the first two unnecessary. We find no authorization for funds here as there was in *Rush. Amicus* urges us to find the necessary authorization in the general-appropriation clauses of Title 30. It first

points to *N.J.S.A.* 30:2–1, which states that all appropriations for the Department of Human Services, of which DYFS is a part, are to be made as "one item." *Amicus* suggests that that provision allows us to conclude that there are funds to permit compliance with an order for payment of Title 30 legal fees. As *amicus* admits, the statutory schemes for all departments, divisions, agencies, and other units of State government include general-appropriation clauses. Thus, under its theory, we could always find that general-appropriation clauses enable us to compel the legislature to pay for whatever services we feel the State should provide. We are not persuaded that all general-appropriation clauses necessarily give us such *carte blanche.*

■ *Amicus* directs us next to *N.J.S.A.* 30:4C–29. That section, however, is for "payments for maintenance" of DYFS. Moreover, that provision grants DYFS "such funds *as shall be appropriated* for the purposes of this act" (emphasis added). Unlike *N.J.S.A.* 2A:158–7, the section provides no general grant of "such funds as are necessary." Nor does it contain the added proviso that an assignment judge can authorize expenses in excess of the appropriated funds. The total expenditures of the Department of Human Services cannot exceed the sums appropriated by the legislature. *N.J.S.A.* 30:2–2. DYFS must perform its duties within the limits of such funds as are appropriated. *State in Interest of D.F.,* 145 *N.J.Super.* 381, 386–87, 367 *A.*2d 1198 (App.Div.1976), *certif. denied,* 74 *N.J.* 260, 377 *A.*2d 665 (1977). No provision appropriates funds for legal representation of parties to Title 30 actions.

■ That omission contrasts with the appropriations for Title 9, chapter 6:

> There shall be appropriated from the general fund such funds as are necessary to implement the provisions and to effectuate the purposes of this act as shall be included in any general or supplemental appropriation act. [*N.J.S.A.* 9:6–8.71 (emphasis added).]

We agree with the Appellate Division that that section appropriates funds to compensate counsel in actions filed under *N.J.S.A.* 9:6–8.21 to –8.73. 219 *N.J.Super.* at 646–47, 530 *A.*2d 1309.

The absence of a similar provision in *N.J.S.A.* 30:4C–15 to –24 suggests that the legislature did not intend to compensate appointed attorneys in parental-rights-termination cases.

As an alternative theory for finding the necessary appropriations, *amicus* urges that we read Title 9 and Title 30 in *pari materia*—that is, we should incorporate the appropriations provision of Title 9 into Title 30 because those two Titles both involve the treatment of children. However, as we observed above, despite some apparent similarities, the Titles are significantly different: the legislature provided funding in one and not the other. It is the prerogative of the legislature to determine whether to appropriate public funds for given purposes.

■■■ *Rush* explicitly left open the question of whether in the absence of statutory authority this Court has the inherent power to order the disbursement of public funds for appointed counsel. 46 *N.J.* at 413–14, 217 *A.*2d 441. Subsequent decisions, however, answered that question. "No money may be drawn from the State treasury but for appropriations made by law. The judiciary could not order the Legislature to appropriate money, or the Governor to approve an appropriation if one were made." *Fitzgerald v. Palmer*, 47 *N.J.* 106, 108, 219 *A.*2d 512 (1966) (citing *N.J. Const. of 1947* art. VIII, § 2, ¶ 2). As we stated in *City of Camden v. Byrne*, 82 *N.J.* 133, 148–49, 411 *A.*2d 462 (1980):

> New Jersey courts have consistently adhered to the principle that the power and authority to appropriate funds lie solely and exclusively with the legislative branch of government. There can be no redress in the courts to overcome either the Legislature's action or refusal to take action pursuant to its constitutional power over state appropriations. (Citations omitted).

That principle applies even if a party is clearly entitled to compensation. In *City of Camden* we endorsed the holding of *Amantia v. Cantwell, supra*, 89 *N.J.Super.* 7, 213 *A.*2d 251, in which the court determined that certain statutes entitled members of the National Guard to payment for particular services. Finding no funds available for that purpose, however, the

Appellate Division refused to issue a *mandamus* directing the State to pay. The court declared: "Whether or not petitioners receive the money to which they are clearly entitled rests exclusively with the Legislature." *Id.* at 13, 213 *A*.2d 251.

That principle is qualified, however, when funds are constitutionally mandated. *Robinson v. Cahill,* 67 *N.J.* 333, 354–55, 339 *A*.2d 193, *cert. denied,* 423 *U.S.* 913, 96 *S.Ct.* 217, 46 *L.Ed.*2d 141 (1975). We therefore must decide whether compensation for attorneys appointed in Title 30 actions is constitutionally mandated.

## IV

*Amicus* argues that several constitutional principles require the payment of appointed attorneys in parental-rights-termination cases. *Amicus* first contends that appointment of unpaid counsel in Title 30 actions violates equal protection by arbitrarily distinguishing (a) legal professionals from other licensed professionals, (b) private attorneys from other officers of the court, and (c) counsel appointed under Title 30 from counsel appointed under Title 9.

■■■ We pause only briefly on the first two contentions. The distinctions between attorneys and other professionals and between attorneys and other officers of the court need be only rationally related to a legitimate state objective. *Taxpayers Ass'n v. Weymouth Township,* 80 *N.J.* 6, 37, 364 *A*.2d 1016 (1976), *cert. denied,* 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977). Quite simply, that threshold is met because neither an engineer nor a stenographer can provide legal representation to an indigent parent or child. *Cf. New Jersey Ass'n of Health Care Facilities v. Finley,* 83 *N.J.* 67, 83, 415 *A*.2d 1147 (nursing homes challenging regulations requiring them to set aside beds for indigent persons as a condition of licensure must show that those regulations are not based on a rational classification), *cert. denied,* 449 *U.S.* 944, 101 *S.Ct.* 342, 66 *L.Ed.*2d 208 (1980).

In *Rush* we disposed of an argument similar to the third one made by *amicus* here—that permitting a distinction between Title 30 attorneys and Title 9 attorneys offends equal protection. There we rejected the contention that a statute that authorized compensation for counsel only in murder cases was arbitrary and violated equal protection. We determined that the legislature could rationally find that "murder cases differ in degree in their demand upon counsel * * *." 46 *N.J.* at 409, 217 *A.*2d 441. Here, the legislature may have decided to compensate only Title 9 counsel because it believed that Title 9 actions are generally more time-consuming and costlier than Title 30 cases. Moreover, the Public Defender indicated at oral argument that there are a great many more Title 9 cases than Title 30 cases. The legislature may have felt that the burden on the bar would be too great if it did not provide for compensation of appointed counsel in Title 9 actions. But even if these distinctions are irrational, the appellants have no remedy because they "could gain nothing if the statute fell because it did not go far enough." *Rush, supra,* 46 *N.J.* at 409, 217 *A.*2d 441.

*Amicus* next claims that the failure to compensate appointed attorneys in Title 30 actions is a deprivation of property without due process. In rejecting such a claim in *Rush,* we said that "[c]onceivably the burden upon the bar could reach such proportions as to give the due process argument a force it does not now have." 46 *N.J.* at 408, 217 *A.*2d 441. *Amicus* claims that the burden on lawyers has reached that "extraordinary stage." *Ibid.* To support that claim, it reminds us that the trial here lasted eighteen days. Although *amicus* does not indicate whether that span of time is normal or unusual, attorneys for the Department of Law and Public Safety claim that in their experience, most guardianship trials last only one or two days. This trial therefore appears to have been abnormally long. As further evidence of the burden on an appointed attorney, *amicus* asserts that during 1987 between 600 and 1000 Title 30 cases required appointed counsel. It surmises that one-half to one-third of the complaints result in a

full trial. At oral argument the State disputed those numbers. It argued that in 1987 there were but 332 guardianships, of which only 235 were litigated. *Amicus* also argues that parental-rights-termination cases are particularly complex. Appellants here had to file a number of motions, prepare witnesses, examine and cross-examine lay and expert witnesses, and make written legal arguments.

Even if its assertions and figures are correct, *amicus* does not show that the burden on attorneys in Title 30 actions is any greater than the burden on criminal lawyers in *Rush*. It provides no evidence that Title 30 cases are more numerous, more complex, more costly, or more protracted than the criminal actions at issue in *Rush*. Indeed, *amicus* conceded at oral argument that the number of cases involved here is "not nearly as significant" as the number involved in *Rush*. In short, *amicus* provides no basis for distinguishing between the circumstances here and those in *Rush*, in which we rejected a due-process claim.

▉ Finally, *amicus* argues that the current scheme constitutes a taking without just compensation. We dismissed that contention in *Rush*, calling it nothing "new." 46 *N.J.* at 408, 217 *A.*2d 441. *Amicus* offers no novel reasons that would warrant our reconsideration of that question.

## V

We find no basis on which to order payment of the costs incurred by the appellants in the underlying Title 30 action. It may be that the legislature's decision not to compensate Title 30 attorneys can be seen as an incentive for the State to seek termination of parental rights rather than less severe remedies. We are confident, however, that when DYFS decides to seek termination of parental rights, it bases its decision on the needs of the child, not on the State pocketbook. Moreover, as we have pointed out, there are several rational reasons that the legislature may have considered in distinguishing between the

Titles. The weighing of those policy considerations is not for this Court but for the legislature. It is to that body that a burdened bar, which devotes countless hours to a broad range of frequently-unheralded *pro bono* endeavors, must address any petition to relieve an apparent inequity.

Judgment affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.