623 A.2d 1379

NEW JERSEY DIVISION OF YOUTH AND FAMILY
SERVICES, PLAINTIFF–RESPONDENT, v. E.B.
AND D.W., DEFENDANTS.

IN THE MATTER OF R.J.B., A MINOR.

Superior Court of New Jersey
Appellate Division

Submitted November 24, 1992—Decided April 1, 1993.

1

Before Judges MICHELS, BILDER and WALLACE.

*Somerset–Sussex Legal Services,* appellant *pro se* (*Elizabeth Szabo,* of counsel and on the letter brief).

*Zulima V. Farber,* Public Defender, Law Guardian for R.J.B., a Minor *(Phyllis G. Warren,* Assistant Deputy Public Defender, of counsel and on the brief).

*Robert J. Del Tufo,* Attorney General of New Jersey, attorney for respondent Division of Youth and Family Services *(Mary Jane Lembo Cullen,* Deputy Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Somerset–Sussex Legal Services (Legal Services) appeals from an order of the Chancery Division, Family Part, that directed it to pay the balance of the court appointed expert's fee incurred in representing defendant E.B. in this custody action instituted by the Division of Youth and Family Services (Division).

The Division sought temporary custody of E.B.'s minor son, R.J.B., because of E.B.'s history of mental illness and suicide attempts. The action was instituted under the provisions of *N.J.S.A.* 9:6–8.21 to 8.73, *N.J.S.A.* 30:4C–12 and *R.* 5:12–1 to 5. The trial court ordered E.B. to show cause why custody of R.J.B. should not be given to the Division and directed E.B. to undergo a psychological examination. Subsequently, D.W., E.B.'s boyfriend, was named as a defendant. E.B. sought legal representation from Legal Services, who determined that E.B. was financially eligible for representation and accepted her as a client. D.W., who was also financially eligible for legal representation from Legal Services, chose to appear *pro se.*

Legal Services apparently objected to Dr. Philip Witt's psychological examination of E.B. because of Dr. Witt's affiliation with Psychological Associates, an organization with which the Division maintains a contract. Legal Services argued that E.B. had a right to an independent expert. Although the record is not entirely clear as to whether Legal Services suggested an alternative expert or suggested someone who was unacceptable to the Division, the parties could not agree on who should perform the evaluations.

As a result, and apparently at the behest of Legal Services, the trial court appointed Dr. Valerie Adams to evaluate both E.B. and D.W. The total cost of Dr. Adams' evaluations was $1,500—more than twice that ordinarily paid by the Division or the Public Advocate, Office of the Public Defender (Public Defender).[1] The Division was ordered and agreed to pay $350 for each evaluation in accordance with its usual practice. Legal Services was required to pay the balance. The trial court, however, reserved to Legal Services the right to request that the Division pay the full cost of both evaluations.

Subsequently, the trial court transferred custody of R.J.B. from the Division back to E.B., subject to the Division's supervision and directed that the matter be reviewed within two months. Legal Services then moved to compel either the Division or the Public Defender, who represented the infant R.J.B. as Law Guardian, to pay the balance of Dr. Adams' fee. The Division argued that its funds were limited and, therefore, it should not bear the entire cost of the expert's fee. The Public Defender argued that it was not obligated to pay for expert fees unless it represented the party requiring the expert's services. Legal Services admitted that it was responsible for the litigation expenses of its client, E.B. However, it argued that such litigation expenses are limited to ordinary expenses such as subpoena attendance and subpoena service fees or judgment searches, and that the $800 balance of Dr. Adams' expert fee was not an ordinary litigation expense. Legal Services also argued that it would be unreasonable to expect it to spend over one-third of its $2,220 1991 budget on a single client. In sum, Legal Services argued that holding it responsible for the entire $800 balance of the expert's fee would "severely restrict a client's right to counsel."

---

[1] We hold to the view that in cases of this kind trial courts should hesitate in appointing any expert whose fees are substantially in excess of the fees ordinarily paid by the Division or the Public Defender, and certainly should not award or approve fees that are substantially in excess of those ordinarily paid by the Division or the Public Defender.

The trial court held that Legal Services was responsible to pay the balance of Dr. Adams' fee for the court-ordered psychological evaluations of E.B. and D.W. and directed the Public Defender to contribute $350 toward the fee, reasoning in part, as follows:

The issue presented in this case is: If the defendant requests the services of an expert and the defendant is indigent, who bears the burden of paying the fees for said experts?

The Court has reviewed the parties' briefs and finds that the Legal Services Corporation must pay the remaining portion of the expert's services provided to the defendant.

It is the understanding of this Court that Legal Services Corporation may have a limited budget but finds it is the defendant's obligation to pay said fee.

Further, it is also this Court's understanding that the Office of the Public Defender shall contribute a portion of said fee. This Court notes that the defendants are entitled to have experts testify in their own accord or to be evaluated by experts. The defendant's obligation to pay said fee stems from the fact that the Office of the Public Defender is not obligated to pay said fee as the defendants are represented by a Legal Services program which has funds, albeit limited funds, to pay said fee, and, most importantly, the defendants are not represented by the Office of the Public Defender.

Further, the defendants were able to, quote, retain, unquote, competent counsel through Legal Services. Said Legal Services are equipped to provide all of the necessary expenses of representation. See *New Jersey Statutes* 2A:158A–14A and H.

Therefore, this Court directs the Office of the Public Defender to contribute $350 towards the total cost of the expert fees with the Legal Services Corporation contributing for the remaining expenses.

Although the trial court's oral opinion directed the Public Defender to pay $350 of the remaining balance of Dr. Adams' fee, the order entered by the trial court required Legal Services to pay the entire balance of $800.[2] Legal Services appealed.

Legal Services contends that the Public Defender is solely responsible for paying expert fees for indigent parents, such as its client, E.B., in the custody proceeding brought under *N.J.S.A.* 9:6–8.21 to 8.73 and *N.J.S.A.* 30:4C–12. It specifically disclaims

---

[2] Ordinarily we would remand this matter to the trial court to clarify the ambiguity and inconsistency between the trial court's oral opinion and order. However, enough time and public resources have been committed to this issue. The sound and efficient administration of justice and the public interest in conserving public funds require that we decide this issue now on this record.

6

the Division's responsibility for any additional costs relating to Dr. Adams' evaluations of E.B. and D.W.

█ It is fundamental that "indigent parents who are subjected to proceedings which may result in either temporary loss of custody or permanent loss of parental rights have a constitutional right to appointed counsel." *In re Guardianship of Dotson,* 72 *N.J.* 112, 123, 367 *A.*2d 1160 (1976); *Crist v. New Jersey Div. of Youth & Family Servs.,* 135 *N.J.Super.* 573, 575, 343 *A.*2d 815 (App.Div.1975). "Simple justice demands nothing less in light of the magnitude of the consequences involved." *Crist v. New Jersey Div. of Youth & Family Servs., supra,* 135 *N.J.Super.* at 575, 343 *A.*2d 815. *Accord Division of Youth & Family Servs. v. D.C.,* 118 *N.J.* 388, 395, 571 *A.*2d 1295 (1990).

█ Recognizing this important fundamental right to counsel, our Legislature determined that indigent parents' or guardians have a right to representation in abuse and neglect proceedings through the Department of the Public Advocate. *N.J.S.A.* 9:6–8.43(a) of the Abuse, Cruelty and Neglect Statute, in pertinent part, expressly provides:

The court shall advise the parent or guardian of his right to have an adjournment to retain counsel and consult with him. *The court shall advise the respondent that if he is indigent, he may apply for an attorney through the Department of the Public Advocate.* The court shall appoint a law guardian for the child as provided by this act. [emphasis added].

Subsequent legislation provided that the Public Advocate could designate the Public Defender to handle Title 9 cases. *See L.* 1977, *c.* 209, ¶ 1(d) and (e). As a result, the general practice is for the Public Defender to assign an attorney in the Public Defender's Law Guardian Program to represent the child and a pool attorney to represent the parent. *See Delbridge v. Office of the Public Defender,* 238 *N.J.Super.* 288, 294, 569 *A.*2d 854 (Law Div.1989). Moreover, in practice the Public Defender not only pays designated counsel, but also "directly provides those resources necessary to the defense of the case, [including] payment for experts or other consultants and payment for transcripts." *Id.* at 320, 569 *A.*2d 854.

■ Against this backdrop, we are satisfied that our Legislature intended to confer primary responsibility for representing indigent parents, guardians and children in Title 9 proceedings upon the Public Defender. Not only has the Legislature assigned the Public Defender to represent these parties in Title 9 cases, but it has also authorized the funding necessary to compensate the Public Defender employees and pool attorneys. According to the Supreme Court, *N.J.S.A.* 9:6–8.71 "appropriates funds to compensate counsel in actions filed under *N.J.S.A.* 9:6–8.21 to –8.73." *Division of Youth and Family Servs. v. D.C., supra,* 118 *N.J.* at 398, 571 *A.*2d 1295.

The Public Defender does not dispute that it would ordinarily pay for experts needed by one of its clients in cases of this kind. Indeed, the Public Defender indicated to the trial court that it had authority to routinely spend up to $200 for an expert, and to spend up to $350 for an expert with special permission. Rather, the Public Defender contends that the trial court does not have authority to require it to advance funds unless the Public Defender represents the client.

■ While this appeal was pending, the Supreme Court held in *Matter of Cannady,* 126 *N.J.* 486, 487, 600 *A.*2d 459 (1991), that the Public Defender can be required to pay the expert fees for an indigent criminal defendant even though that defendant was represented by private counsel. There, the Supreme Court noted that as long as the parents qualify as indigents and the expenses were reasonable and necessary, the Public Defender can be held responsible for those expenses. *Id.* at 497–98, 600 *A.*2d 459; *see also Matter of Kauffman,* 126 *N.J.* 499, 600 *A.*2d 465 (1991); *State v. Arenas,* 126 *N.J.* 504, 600 *A.*2d 467 (1991). Applying these fundamentally sound principles here, it appears that it is no longer necessary that the Public Defender represent an indigent parent or guardian or that the parent or guardian seek representation from the Public Defender in order for the Public Defender to be responsible for the reasonable costs of necessary experts. Consequently, the Public Defender is responsible for the reasonable and

necessary expenses incurred for the use of expert witnesses in child abuse and neglect proceedings brought under *N.J.S.A.* 9:6–8.21 to 8.73 and *N.J.S.A.* 30:4C–12, even though the parent is represented by an attorney not employed or retained by the Public Defender.[3]

■ Although the Public Defender is responsible for a portion of Dr. Adams' fee, we agree with the trial court that Legal Services should also be required to pay a portion of the fee. *R.* 5:3–3(a) provides, in pertinent part, that

> Whenever the court, in its discretion, concludes that disposition of an issue will be assisted by expert opinion, and whether or not the parties propose to offer or have offered their own experts' opinions, the court may order any person under its jurisdiction to be examined by a physician, psychiatrist, psychologist or other health or mental health professional designated by it. The court may also direct who shall pay the cost of such examination.

Thus, the trial court had the authority to determine who should pay the fee incurred for the court-appointed expert and, in the proper exercise of its discretion, required both the Public Defender and Legal Services to pay the remaining balance of the fee. The fact that Legal Services did not select the expert does not relieve it from its obligation to contribute to the expert's fee because, indeed, the trial court probably would not have been

---

[3] We are not unmindful of the fact that the Supreme Court recognized in *Matter of Cannady* that the Public Defender must retain some discretionary authority over what services will be provided and directed that specific inquiries be made before authorizing expenditures to maintain control over the budget. *Matter of Cannady, supra,* 126 *N.J.* at 493–98, 600 *A.2d* 459. Thus, the Public Defender should have had an opportunity to conduct the necessary inquiry and make the appropriate determinations as to the reasonableness and necessity of the evaluation by Dr. Adams. However, since the trial court appointed Dr. Adams after the Supreme Court's decision in *Matter of Cannady* and since the evaluations have been performed, it would seem impractical and unnecessarily expensive to remand the matter now. However, in the future, if the Public Defender is to be required to pay all or a portion of any fees for experts in cases of this kind, the application should be made to the Public Defender in accordance with the procedures established by the Supreme Court in *Matter of Cannady, supra,* 126 *N.J.* at 493–497, 600 *A.2d* 459 and in *State v. Arenas, supra,* 126 *N.J.* at 509, 600 *A.2d* 467.

required to appoint Dr. Adams had Legal Services not objected to Dr. Witt's evaluation. *Compare Matter of Guardianship of S.C.,* 246 *N.J.Super.* 414, 430, 587 *A.*2d 1299 (App.Div.), *certif. denied,* 126 *N.J.* 334, 598 *A.*2d 891 (1991) (Division not responsible for expert fees where it had "no control over or input into" the choosing of expert). It must be remembered that indigent litigants and their attorneys, including Legal Services, "do not have a limitless right in selecting experts of their own choosing and imposing the costs thereof on the State." *See id.* at 429–31, 587 *A.*2d 1299. Moreover, the trial court apparently appointed Dr. Adams with the understanding that Legal Services might be held responsible for the balance of Dr. Adams' fee not paid by the Division. In any event, Legal Services did not make it clear at the outset that under no circumstances could it or would it be responsible for the balance of Dr. Adams' fee, and that it would apply to compel the Public Defender to pay the balance of the fee. Had Legal Services done so, the trial court might well have appointed a less expensive expert, perhaps one under contract with the Division barring any indication of bias, or at the very least might have sought the Public Defender's views before appointing Dr. Adams.

Additionally, Legal Services does have funds for litigation expenses, although they are limited. By letter, the Executive Director of Legal Services advised the trial court that Legal Services "has never taken the position that State restrictions prohibit our office from paying litigation expenses on behalf of our client." Legal Services urged the trial judge not to require it to pay because its litigation budget for the fiscal year was very limited, particularly in view of the 1,400 clients that it represented that year. Nonetheless, there is no reason in these kinds of cases why Legal Services should not be compelled to share the costs of the expert appointed at its behest after rejecting a less expensive expert. *See id.* at 429–31, 587 *A.*2d 1299. Thus, we agree with the trial court that Legal Services should be responsible for a portion of Dr. Adams' fee.

Accordingly, the order under review requiring Legal Services to pay the entire balance of $800 of Dr. Adams' fee is modified to

provide that the Public Defender and Legal Services shall each pay $400 of the remaining balance due Dr. Adams.