656 A.2d 1262

IN THE MATTER OF THE GUARDIANSHIP
OF C.A.B., JR., AND I.B., MINORS.

Argued March 14, 1995—Decided April 24, 1995.

*Sheila Crotty,* Deputy Attorney General, argued the cause for appellant, New Jersey Division of Youth and Family Services (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Ms. Crotty* and *Geraldine O. Livengood,* Deputy Attorney General, on the briefs).

*Nila M. Pusin* argued the cause for respondent C.A.B., Sr. (*Starr, Gern, Davison & Rubin,* attorneys; *James V. Loewen,* on the letter brief).

*Thomas M. Bachman,* Assistant County Counsel, argued the cause for respondent County of Essex (*Stephen J. Edelstein,* Essex County Counsel, attorney).

PER CURIAM.

In this matter the Division of Youth and Family Services (DYFS) in the Department of Human Services petitioned the Court primarily to determine whether state or county government is responsible for reimbursing *pro bono* counsel for incidental litigation expenses in a custody action instituted by DYFS for termination of parental rights. 138 *N.J.* 268, 649 *A.*2d 1288 (1994). The Appellate Division had ordered DYFS to pay *pro bono*

counsel's out-of-pocket expenses in connection with the appeal to that court. When the petition was filed it was uncertain whether state or county government must reimburse counsel for such necessary expenses. *N.J.S.A.* 2A:152–17 requires counties to pay for trial transcripts in a criminal appeal when the defendant is indigent. That statute, however, was largely superseded by the Public Defender Act, *N.J.S.A.* 2A:158A–1 to –25, which requires that the Office of the Public Defender pay for trial transcripts for indigents who qualify for assistance. *N.J.S.A.* 2A:158A–5; *State v. Arenas,* 126 *N.J.* 504, 507, 600 *A.*2d 467 (1991). Nonetheless, the question that remained was whether counties should provide transcripts in child-custody actions to indigents appealing termination of their parental rights.

In *In re Guardianship of G.S., III,* 137 *N.J.* 168, 177, 644 *A.*2d 1088 (1994), we concluded that "because parental-rights-termination proceedings are part of a unitary, centralized State program, DYFS should undertake [such] costs." Following that decision, DYFS filed a supplemental brief acknowledging that it bore the burden of production and duplication of transcripts. In this case DYFS agreed to pay for the transcript that had been produced and to reimburse *pro bono* counsel for the duplication of the transcript. In future cases, DYFS will, subject to the requirements of *In re Guardianship of Dotson,* 72 *N.J.* 112, 367 *A.*2d 1160 (1976), cause the transcripts to be produced and the necessary copies to be made so that *pro bono* counsel may prosecute an appeal.

However, DYFS has urged the Court that it should not approve reimbursement to *pro bono* counsel for other miscellaneous expenses, such as those for delivery services, computerized legal research, parking, travel, and other related expenses. DYFS argued that permitting reimbursement for such incidentals would result in unnecessary and pointless litigation over the reasonableness of such expenses. In this case *pro bono* counsel's out-of-pocket expenses totalled $2867.25. Those expenses consisted of $2002.98 for photocopying, and $864.25 for courier fees,

computerized research, and travel expenses. Based on the circumstances of this case, such incidental expenses for all *pro bono* counsel might amount to as much as $500,000 annually, which would deplete the funds needed to provide protective services for children.

We acknowledge the difficult social decisions presented by this case, but we believe that *pro bono* counsel have already made an extraordinary commitment to the public interest. By virtue of their court assignments, such counsel represent indigent defendants in as many as 200 litigated cases a year. *New Jersey Div. of Youth & Family Servs. v. D.C.*, 118 *N.J.* 388, 402, 571 *A.*2d 1295 (1990). If DYFS were obliged to provide that legal representation, the costs would be staggering. But in *D.C., supra,* we held that attorneys assigned to represent indigent parents and their children in parental-rights-termination proceedings are not entitled to compensation for their legal services. We did so because no statute authorized such compensation. *Id.* at 395–97, 571 *A.*2d 1295.

However, our decision in *D.C.* did not mean that lawyers had an obligation to expend their personal funds when undertaking such representation. *See R.* 1:13–2(b) (stating that no attorney shall be required to expend any personal funds for court fees and charges for service of process when representing a person by reason of poverty). Many attorneys tend to absorb incidental litigation expenses as part of the representation. We believe, however, that attorneys who do request reimbursement are reasonably entitled to it.

■ We are satisfied that in this case the expenses incurred by *pro bono* counsel were not unreasonable and should be reimbursed. Because of budgetary concerns, we make this ruling applicable to this case and to any other cases that have not yet been completed. DYFS acknowledges its future obligation to provide transcripts for indigents in parental-rights-termination cases under Title 30. Also, it has agreed to provide the necessary transcript copies at its own expense, and thereby eliminate the

need for duplication of such transcripts. Because of reasons of confidentiality, it is more practical that briefs be duplicated by counsel. To the extent possible, *pro bono* counsel should confer with DYFS before incurring unusual expenses. *See In re Cannady*, 126 *N.J.* 486, 496, 600 *A.*2d 459 (1991) (requiring private counsel for indigents in criminal cases to confer with the Office of the Public Defender before incurring questionable expenses).

■ In the same spirit in which attorneys have undertaken this *pro bono* representation, we are certain that they will attempt to keep incidental litigation expenses at a minimum. In this case, *pro bono* counsel's computerized legal research was done merely to ensure that cited cases had not been overruled. We do agree with DYFS that whenever possible, efforts should be made to avoid unnecessary expenses such as the use of overnight delivery services. At oral argument, *pro bono* counsel expressed concern that it was bound to meet necessary deadlines and had no choice but to use such a service. Courts should be willing to accept reasonable requests for brief extensions of time from *pro bono* counsel in cases like the one at bar. Should any future problems arise in connection with such considerations, the matter should be brought to our attention for administrative resolution.

■ One point of concern remains. In her brief the Attorney General informs us that there have been instances when people of means have been assigned *pro bono* counsel in parental-rights-termination proceedings. Courts must carefully evaluate whether one is indigent before appointing *pro bono* counsel, lest public resources be diverted unnecessarily.

The order of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN, JJ.

Opposed—None.