644 A.2d 1093

NEW JERSEY DIVISION OF YOUTH AND FAMILY
SERVICES, PLAINTIFF–RESPONDENT, v. E.B.
AND D.W., DEFENDANTS.

IN THE MATTER OF R.J.B., A MINOR.

Argued January 19, 1994—Decided May 24, 1994.

*Dale Jones,* Assistant Public Defender, argued the cause for appellant Office of the Law Guardian Program (*Zulima V. Farber,* Public Defender, attorney).

*Elizabeth Szabo,* Staff Attorney, argued the cause for respondent Somerset Sussex Legal Services (*Diane K. Smith,* Executive Director of Somerset Sussex Legal Services, attorney).

*Mary Jane Lembo–Cullen,* Deputy Attorney General, argued the cause for respondent New Jersey Division of Youth and Family Services (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel).

*Nancy Goldhill* argued the cause for *amicus curiae* Legal Services of New Jersey (*Melville D. Miller, Jr.,* President, attorney).

The opinion of the Court was delivered by

O'HERN, J.

This appeal concerns a dispute among agencies of government and a public-interest law firm about who should pay for the services of an expert witness required by an indigent defendant in a child-custody action instituted by the Division of Youth and Family Services (DYFS) in the Department of Human Services. The parties before us are Somerset Sussex Legal Services (Legal Services), which represented the indigent defendant, E.B., at trial; the Office of the Public Defender (OPD), which represented the infant, R.J.B., as Law Guardian, at trial; and DYFS. In the related case of *In re Guardianship of G.S.,* 137 *N.J.* 168, 644 *A.*2d 1088 also decided today, we resolve the question of which government agency should pay for transcripts needed by an indigent to appeal the termination of parental rights.

In this case, we affirm the Appellate Division's allocation of payment of the remaining balance of the expert witness's fee between Legal Services and OPD. Were we writing on a clean slate here, we would not approve of the requirement that Legal Services pay half of the fee. During oral argument, counsel for OPD acknowledged that under the principles of *In re Cannady*, 126 *N.J.* 486, 600 *A.*2d 459 (1991), discussed *infra* at 186–87, 644 *A.*2d at 1096–97, OPD should be responsible for these ancillary services. We appreciate counsel's candor. We shall require that OPD pay the costs of such ancillary services in future cases within its jurisdiction, even when the indigent is represented by private or public-interest counsel, subject to OPD's evaluation of the reasonableness and need for the services.

## I

On December 7, 1990, DYFS filed a protective-services complaint pursuant to *N.J.S.A.* 9:6–8.21 to –8.73 (Title 9), *N.J.S.A.* 30:4C–12, and *Rules* 5:12–1 to –5. DYFS sought temporary custody of E.B.'s two-day-old son, R.J.B., because it feared potential child abuse and neglect. E.B., who had a lengthy mental-health history, had attempted suicide several times. In addition, on December 11, 1990, a doctor diagnosed E.B. as suffering from a borderline personality disorder that frequently caused her to be impulsive, unstable, and moody, to exercise poor judgment, and to be unable to maintain appropriate control of her anger. At the time of R.J.B.'s birth, E.B. lived with D.W. Because of their relationship, DYFS amended the complaint to include him as a defendant.

A.L., the child's biological father, voluntarily relinquished his parental rights. E.B. refused the request of DYFS to place voluntarily her newborn infant into foster care. She obtained representation from Legal Services. D.W. appeared *pro se* before the court.

DYFS requested that the parental custodians, E.B. and D.W., undergo psychological evaluations prior to the scheduled Title 9

child-abuse and neglect hearing. DYFS offered to pay for the psychological evaluation if it were conducted by Psychological Associates, Inc., a company with which it had contracted to perform such services. Fearing that bias would influence psychological evaluations rendered by a company under contract to and perhaps controlled by DYFS, Legal Services requested that the trial court appoint an independent expert. That court exercised its discretion to appoint an expert other than Psychological Associates, Inc. That expert's $1500 fee was more than twice the fee normally charged by the psychologists whom DYFS usually used. DYFS agreed to pay the $700 that it would normally pay. This dispute concerns the $800 balance.

The trial court held that Legal Services must pay the balance. Legal Services appealed, arguing that *N.J.S.A.* 9:6–8.43 mandates that OPD pay for all required experts for indigent defendants in Title 9 child-abuse and neglect actions, even if the indigent is represented by private counsel other than those assigned by OPD.

The Appellate Division held that "the Public Defender is responsible for the reasonable and necessary expenses incurred for the use of expert witnesses in [Title 9] proceedings * * *, even though the parent is represented by an attorney not employed or retained by the Public Defender." 264 *N.J.Super.* 1, 7–8, 623 *A.*2d 1379 (1993) (footnote omitted). It also held that the trial court had properly exercised its discretion under *Rule* 5:3–3(a) in requiring Legal Services to contribute to the cost of the expert, but the Appellate Division modified the trial court's order to provide that OPD and Legal Services each contribute $400 toward the balance due the expert. *Id.* at 8–10, 623 *A.*2d 1379. We granted OPD's petition for certification, 134 *N.J.* 479, 634 *A.*2d 526 (1993).

## II

DYFS's statutory mission is to protect the health and welfare of the children of this state. *N.J.S.A.* 30:4C–4. It does so under two statutory mandates. The first is set forth in *N.J.S.A.* 9:6–8.21 to –

8.73 and is collectively known as Title 9, and the second is set forth in *N.J.S.A.* 30:4C–1 to –40, known as Title 30.

Title 9 covers the adjudication of child-abuse and neglect cases. If abuse or neglect of a child is discovered, *N.J.S.A.* 9:6–8.54 authorizes the court to place the child in a safe haven for an initial period not to exceed eighteen months. Subsequently, on confirmation of such child abuse and neglect, *N.J.S.A.* 9:2–18 permits approved agencies to file a complaint in the Superior Court seeking to terminate parental rights pursuant to Title 30. *N.J.S.A.* 30:4C–12 empowers DYFS not only to receive and investigate complaints of child abuse or neglect but also, if necessary, to apply for temporary custody of such children. Under Title 30, DYFS may seek to take children from their parents permanently, terminate the parents' parental rights, and arrange for the adoption or permanent placement of the children. In a recent series of cases, we have explained the scope of DYFS's jurisdiction in that area and the requirements that must be met before termination of parental rights. *In re Guardianship of K.L.F.*, 129 *N.J.* 32, 608 *A.*2d 1327 (1992); *In re Guardianship of J.C.*, 129 *N.J.* 1, 608 *A.*2d 1312 (1992); *New Jersey Div. of Youth & Family Servs. v. A.W.*, 103 *N.J.* 591, 512 *A.*2d 438 (1986).

The overlapping of Titles 9 and 30 causes occasional misunderstanding. For example, in a pending child-abuse and neglect case (*New Jersey Div. of Youth & Family Servs. v. K.M.*, 136 *N.J.* 546, 643 *A.*2d 987 (1994) (in which we have entered an order of disposition)), DYFS proceeded with a Title 30 parental-rights-termination case while a Title 9 child-abuse and neglect case was awaiting appeal. Such overlapping often occurs when child abuse or neglect is involved in Title 30 parental-rights-termination cases. On the other hand, termination of parental rights can occur without child abuse and neglect. Because Title 9 provides compensation for legal representation of indigents and Title 30 does not, courts must be concerned with which of the two titles applies or was used to pursue a particular goal. *See New Jersey Div. of Youth & Family Servs. v. D.C.*, 118 *N.J.* 388, 571 *A.*2d 1295 (1990)

(holding that lawyers appointed to represent indigent defendants in Title 30 actions are not entitled to compensation, although in actions brought under Title 9 OPD must provide representation to indigent defendants). The reason for that different statutory treatment is not all that clear; the difference itself, however, is.

### III

Courts have long recognized that parents charged with abuse or neglect of their children have a constitutional right to counsel. See, e.g., Crist v. New Jersey Div. of Youth & Family Servs., 135 N.J.Super. 573, 576 n. 2, 343 A.2d 815 (App.Div.1975); see also N.J.S.A. 9:6–8.23 (mandating that in child-abuse and neglect proceedings, court will appoint law guardian to provide representation to minor who is subject of such abuse or neglect and that other interested parties are not precluded from representation by counsel). Title 9 acknowledges that right in child-abuse and neglect actions by providing defense counsel through OPD.

The Legislature created OPD on July 1, 1967, to provide representation to indigent defendants in criminal cases. See N.J.S.A. 2A:158A–1 to –25. In 1974, the Legislature established the Department of the Public Advocate (Public Advocate). See N.J.S.A. 52:27E–1 to –47. The Legislature allocated the duties and responsibilities of OPD to the Public Advocate. N.J.S.A. 52:27E–9. N.J.S.A. 9:6–8.43 provides that indigent parents or guardians may apply to the Public Advocate for attorneys to represent them at Title 9 proceedings. N.J.S.A. 9:6–8.71 directs that the Legislature appropriate funds to implement the provisions of Title 9, including funds to compensate counsel who appear on behalf of indigents in those actions. See D.C., supra, 118 N.J. at 398, 571 A.2d 1295.

Under the mandate, OPD is to provide and to pay for the legal representation and the necessary and related ancillary services for a qualified indigent. In some cases OPD may be representing the child or children involved, thus requiring the provision of outside counsel for the parents. The parents' inter-

ests, too, may conflict, requiring separate counsel for each. The issue in this case is whether the Legislature also intended OPD to pay for the ancillary services needed for the defense of eligible indigents represented by attorneys not provided by OPD.

An analogous case, *Cannady, supra*, dealt with the cost of ancillary services in a criminal action. 126 *N.J.* at 492, 600 *A.*2d 459. Because OPD was statutorily required to provide all qualified indigents with legal representation, we determined that that mandate included payment of expert fees even when the indigent was not represented by an OPD attorney. We viewed the State's policy, as expressed in the Public Defender Act, to be "to provide counsel for all indigent defendants," not merely for those represented by OPD. *Ibid.* We held that the Act requires OPD to make its services available not only to a defendant financially unable to hire private counsel, but also to a defendant who was or would have been unable to pay for all other necessary services and expenses associated with adequate legal representation. *Ibid.* We said: "[T]he Legislature intended a unitary, centralized system through which all necessary expenses of representation of an indigent defendant would be paid by the OPD, regardless of whether that defendant is represented by the OPD." *Id.* at 497–98, 600 *A.*2d 459.

Although *Cannady* dealt with criminal defendants, its interpretation logically extends to indigent defendants in Title 9 actions. Even if a qualified indigent defendant is represented by private counsel, the Public Defender Act obligates OPD to fund the reasonable ancillary services necessary to provide an effective legal representation subject to the *Cannady* requirements.

In *Cannady*, we recommended a procedure that OPD should follow when an indigent defendant represented by outside counsel applies to OPD to obtain payment for such ancillary services. OPD should control the amount of its funds expended for a legal defense, should participate in the determination of indigency, and should determine the necessity and reasonableness of those requested ancillary services. *Id.* at 493–97, 600 *A.*2d 459. The

Public Defender Act confirms that interpretation by stating: "The factors of need and real value to a defense may be weighed against the financial constraints of the Public Defender's office in determining what are the necessary services and facilities of representation." *N.J.S.A.* 2A:158A–5.

## IV

■ Although we extend the principles of *Cannady* to require OPD to provide ancillary services to indigents in need of ancillary services in Title 9 child-abuse and neglect actions, we cannot extend that principle to Title 30 parental-rights-termination proceedings. The legislative classification of Title 9 and Title 30 actions will continue to result in different outcomes insofar as payment for ancillary services is concerned. (By the inclusion of a citation to *N.J.S.A.* 30:4C–12 in the Appellate Division holding below, that court intended to encompass only abuse and neglect actions brought under that complementary authority, not cases involving termination of parental rights.)

Consequently, in Title 9 child-abuse and neglect actions, trial courts should comply with the methodology established in *Cannady*, which requires OPD either to provide a qualified indigent with legal representation and related ancillary services by appointing an OPD attorney or to pay for such related services provided by private counsel.

However, in Title 30 parental-rights-termination actions, courts should follow the principles set forth in *G.S., supra*, 137 *N.J.* 168, 644 *A.*2d 1088, also decided today. In that case, we hold that DYFS, as the agency initiating the action, will be responsible to pay for the necessary and related defense services required by a qualified indigent when OPD is not required to fund the defense.

## V

■ In this case, we agree that Legal Services should pay a portion of the disputed fee. In the proper exercise of its discre-

tion, and in accordance with *Rule* 5:3–3(a), the trial court had the power to order examinations by experts and, as well, direct who should pay the expense of such court-appointed experts. *Rule* 5:3–3(a) provides:

> Whenever the court, in its discretion, concludes that disposition of an issue will be assisted by expert opinion, and whether or not the parties propose to offer or have offered their own experts' opinions, the court may order any person under its jurisdiction to be examined by a physician, psychiatrist, psychologist or other health or mental health professional designated by it. The court may also direct who shall pay the cost of such examination.

In *J.C.*, *supra*, we acknowledged the competing views in experts' psychological theories of relationships between children and their natural parents. 129 *N.J.* at 18–26, 608 *A.*2d 1312. "A court must assure a complete and balanced presentation of all relevant and material evidence sufficient to enable it to make a sound determination consistent with the child's best interests." *Id.* at 22, 608 *A.*2d 1312. Because experts' opinions play such critical roles in courts' ultimate decisions in child-custody cases, courts may use independent and objective experts. *Ibid.*

DYFS recognizes the necessity for an unbiased and exhaustive presentation of all material and relevant evidence in child-custody cases to assure the child's best interests. For example, in this case, it voluntarily paid half of the expert's fee for the indigent parent. Our holding will not discourage DYFS from continuing its custom of offering the services of experts with whom it has contracted or in applying the payment of those fees toward the fees of court-appointed independent experts.

In this case, because the expert was appointed at the request of Legal Services, which had rejected the less-expensive but perhaps less-independent expert with whom DYFS had a contract, it is not unfair that it should at least contribute to the fee of the expert. Although Somerset Sussex Legal Services' public-interest mission is to provide representation to indigent defendants in this class of cases, its $2400 budget for trial services cannot sustain many such assessments.

In future cases, then, courts shall follow the standards that we have set forth herein. If OPD is required to pay all or a portion of any fees for experts in cases of this nature, the application for such expenses should be made directly to OPD in accordance with the procedures established by this Court in *Cannady, supra,* 126 *N.J.* at 493–97, 600 *A.*2d 459. The trial court should review and resolve any dispute about OPD's decision. This case shows that it will not always be easy to follow the *Cannady* procedures in a rapidly unfolding child-custody case. The psychological evaluation of this mother had to be made within days. Trial courts retain a reservoir of discretion to appoint their own experts when necessary to the disposition of a matter and may allocate the costs accordingly. We expect that to be a rare circumstance.

The judgment of the Appellate Division is affirmed.

*For affirmance* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.