644 A.2d 1088

IN THE MATTER OF THE GUARDIANSHIP
OF G.S., III, A MINOR.

IN THE MATTER OF THE GUARDIANSHIP
OF S.A.M.M.J., A MINOR.

IN THE MATTER OF THE GUARDIANSHIP
OF C.R.S. AND K.K.B.S., JR., MINORS.

IN THE MATTER OF THE GUARDIANSHIP OF A.C.C., V.C.K. &
K.C.; THE GUARDIANSHIP OF H.H.K. & C.E.W., II; THE
GUARDIANSHIP OF C.C.; THE GUARDIANSHIP OF W.A.P.;
THE GUARDIANSHIP OF A.C.M., L.A.M., P.M.M., J.A.M., P.L.M.
& R.M., MINORS.

Argued January 19, 1994—Decided May 24, 1994.

Peter D. Alvino, Deputy Attorney General, argued the cause for appellant, New Jersey Division of Youth and Family Services (Deborah T. Poritz, Attorney General of New Jersey, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel;

Alvino, *Marcia·Membrino, Sheila Crotty*, Deputy Attorneys General, on the briefs).

*Dianne Herland Sloane*, Special Counsel, argued the cause for respondent County of Gloucester.

*John P. Gallina* argued the cause for respondent County of Hunterdon (*Gaetano M. DeSapio*, Hunterdon County Counsel, attorney).

*Gary A. Kraemer* submitted a brief on behalf of respondent E.S. (*Daggett & Kraemer*, attorneys).

*William J. McGovern, III*, submitted a brief on behalf of respondent G.S., Jr. (*McGovern* and *Roseman*, attorneys).

*Malcolm V. Carton*, Monmouth County Counsel, submitted a letter in lieu of brief on behalf of respondent County of Monmouth.

*Donald M. Weitzman* submitted a letter in lieu of brief on behalf of respondent D.S. (*Glucksman & Weitzman*, attorneys).

The opinion of the court was delivered by

O'HERN, J.

This appeal concerns the procedure for providing trial transcripts to indigent parents who appeal the termination of their parental rights and the designation of the appropriate entity to pay for those transcripts. The issues are related to those in *New Jersey Division of Youth & Family Services v. E.B.*, 137 *N.J.* 180, 644 *A.*2d 1093, also decided today, which concern the obligation of the Office of the Public Defender (OPD) to provide ancillary services in certain child-abuse and neglect proceedings that it is statutorily mandated to defend. See *N.J.S.A.* 9:6–8.21 to –8.73 (Title 9); *N.J.S.A.* 30:4C–12.

To reduce delay in appeals involving termination of parental rights, the Appellate Division identifies and accelerates the processing of those appeals. We have employed various procedures by which parties without financial means can obtain the essential transcripts required for review by the Appellate Division and

without undue delay. Our concern in this appeal, as in many others, is which entity should pay for those transcripts. We hold that in cases in which OPD is not statutorily mandated to defend the case, the Division of Youth and Family Services (DYFS), the agency designated to initiate and prosecute actions to terminate parental rights on the grounds of the best interests of the child, must bear the cost of the requisite transcripts. *See N.J.S.A.* 30:4C–15.

## I

The parties in these cases filed their appeals in the Appellate Division, at which time a 1989 directive for furnishing trial transcripts to indigents was in effect. Before we describe that 1989 procedure, we must review the guidelines initially outlined for trial courts in *In re Guardianship of Dotson*, 72 *N.J.* 112, 367 *A.*2d 1160 (1976).

## A.

In *Dotson, supra*, the Court held that indigent parents appealing the termination of their parental rights have the right to obtain trial transcripts at public expense when they are necessary to their appeal. *Id.* at 118–19, 367 *A.*2d 1160. In Justice Pashman's concurrence, he stated that indigent parents' right to transcripts is grounded in principles of constitutional due process and equal protection. *Id.* at 120–21, 367 *A.*2d 1160. The Court's acknowledgement that the proceeding is "quasi-criminal" led him to the conclusion that parents cannot be prejudiced in their appeals by virtue of their poverty any more than can indigent criminal defendants. *Id.* at 123, 367 *A.*2d 1160. In New Jersey, indigent criminal defendants are entitled to free transcripts prepared at public expense pursuant to the Court Rules and statute. *Id.* at 124, 367 *A.*2d 1160; see *R.* 2:5–3; *N.J.S.A.* 2A:152–17.

However, in *Dotson, supra*, the Court found that the right to a complete trial transcript was not automatic. Instead, the Court established a procedure under which a trial court was required to

determine whether the grounds stated for appeal were frivolous, and if not, whether it could decide the issues using an abbreviated transcript, *Rule* 2:5–3(c), a statement of proceedings in lieu of transcript, *Rule* 2:5–3(f), or a judicial reconstruction. *Id.* at 118, 367 *A.*2d 1160. Additionally, a trial court was required to determine whether alternative means of financing the production of a complete transcript, such as federal funds, were available before going through the process of determining whether a transcript that was less than complete would suffice. *Id.* at 119, 367 *A.*2d 1160.

The Court held that in cases involving "a most sensitive area of basic human relations," such as termination of parental rights, when complete trial transcripts are necessary to indigent parents' appeals, if no alternative sources provided transcripts, DYFS "will have to bear the cost thereof." *Id.* at 118–19, 367 *A.*2d 1160. In *Dotson, supra,* the Court ordered that DYFS pay for the transcript. The county in which that action took place was not a party to the action.

### B.

Following *Dotson,* increasing concern about delays in Family Part appeals required the establishment of new procedures to insure justice and fairness to indigent parties under which they could swiftly obtain transcripts to process their appeals. The Chief Justice's Administrative Directive # 9–89 of September 20, 1989, set forth a procedure that required the Administrative Office of the Courts (AOC) to advance the cost of payment of transcripts of parental-rights-termination proceedings on the filing of such appeals. That procedure was designed to avoid delays caused by disputes over who would pay for the transcripts. The idea was to get the transcripts to the indigent parties first and then decide who would pay. Pursuant to the directive, the Appellate Division or the trial court would determine the appropriate source for reimbursement of the transcript costs after an appeal had been decided.

Subsequently, on October 22, 1992, Directive # 5–92 rescinded Directive # 9–89. Directive # 5–92 provides that "[i]ndigent appellants will be required to move for free transcripts in termination of parental rights or child abuse appeals. Ordinarily, these motions should be made and decided in the trial court under the guidelines set forth in *In re Guardianship of Dotson,* 72 *N.J.* 112 [367 *A.*2d 1160] (1976)." Directive # 5–92 further provides the theory for a change in procedure to be to resolve better and more expeditiously the dispute: "It is anticipated that this goal can better be achieved with the trial judge addressing the transcript issue at the inception of the appeal."

## II

We focus now on the cases before us. The Appellate Division in each instance properly followed the procedure detailed in Directive # 9–89, which was in effect at the time the notices of appeal were filed, and we affirm its judgments.

## A.

In the first three cases, *In re Guardianship of G.S., In re Guardianship of S.A.M.M.J.,* and *In re Guardianship of C.R.S. & K.K.B.S.,* the respective trial courts entered judgments terminating the parental rights of the parents. The parents filed notices of appeal. The Appellate Division, in unpublished opinions, affirmed the judgments. Pursuant to Directive # 9–89, the Appellate Division directed that DYFS reimburse the AOC for the cost of the transcripts required for appellate review rather than remanding the issue to the trial courts. DYFS petitioned for certification, claiming that the Appellate Division should not have ordered DYFS to pay for trial transcripts but should have remanded the issue to the trial courts to determine appellants' indigence, the necessity of a complete transcript, and the possibility of other sources for payment pursuant to *Dotson, supra,* 72 *N.J.* at 117–18, 367 *A.*2d 1160. We granted DYFS's petitions for certification, 134 *N.J.* 479, 634 *A.*2d 526 (1993).

## B.

Five other cases consolidated for review under the caption of *In re Guardianship of A.C.C., V.C.K. & K.C.* also involve reimbursement to the AOC for the cost of transcripts required for termination of parental-rights appeals. In compliance with Directive # 9–89, the Appellate Division remanded the issue of payment of transcript costs to the respective trial courts. The trial court in each case directed DYFS to reimburse the AOC for the transcripts. The Appellate Division consolidated the five cases for disposition and, in an unpublished opinion, affirmed those judgments. DYFS petitioned for certification, claiming that the court had no legislative authority to order DYFS to pay those costs and that the county in each case is the appropriate party to bear the cost of preparing the transcripts. Although the counties were not parties to the actions below, DYFS contends that the counties must pay for those transcripts just as they pay for other expenses ancillary to the representation of indigents in quasi-criminal proceedings, for which OPD does not bear the cost. We granted DYFS's petition for certification, 134 *N.J.* 569, 636 *A.*2d 526 (1993).

## III

In *New Jersey Division of Youth & Family Services v. E.B., supra,* 137 *N.J.* 180, 644 *A.*2d 1093, also decided today, we set forth the interrelated procedures for reimbursement of ancillary services in certain child-abuse and neglect proceedings under Title 9. *N.J.S.A.* 30:4C–12 sets forth parallel procedures to provide for temporary care, custody, and guardianship when a child is abused or neglected. In sum, we held that in cases that fall within the province of OPD to defend, that agency pays for essential ancillary services such as expert fees and transcript costs. So too here, we rule that were these Title 9 cases, OPD would bear the burden. Because OPD is not involved, however, the source of payment for transcripts in termination of parental-rights proceedings under *N.J.S.A.* 30:4C–1 to –40 (Title 30) is

either DYFS or the counties. No party has identified a federal source for payment of transcripts.

In *New Jersey Division of Youth & Family Services v. D.C.*, 118 *N.J.* 388, 571 *A.2d* 1295 (1990), we held that attorneys assigned to represent indigent parents and their children in parental-rights-termination proceedings are not entitled to public compensation. In *D.C.* we reviewed the statutory duties of DYFS in terms of an obligation to provide counsel for indigent parents. Although recognizing that parents have a right to counsel, we decided not to impose on DYFS the obligation to compensate their counsel. We so held because of the special history and tradition of the bar to provide legal representation. We require lawyers to provide *pro bono* service to the public. *See R.* 3:27–2.

However, our decision in *D.C., supra,* does not control this case. We are unable to conclude that those who provide transcript services to the courts have the same obligation as attorneys to provide *pro bono* assistance. That being so, we hold that DYFS, the agency of government involved, must bear the cost of providing transcripts for indigent parents in termination proceedings. *See In re Guardianship of S.C.*, 260 *N.J.Super.* 304, 308, 616 *A.2d* 924 (App.Div.1992).

Although not expressly required by statute to provide free transcripts to indigents, DYFS must, under statutory authority, undertake the prosecution of parental-rights-termination proceedings and, as part of the agency's mission, request from the Legislature the sums necessary to "carry into effect the provisions of [Title 30]."

*N.J.S.A.* 30:4C–30 states in pertinent part:

> The Governor shall fix and determine and state in [her] annual budget message a sum sufficient to pay the estimated amount required to carry into effect the provisions of this act [*N.J.S.A.* 30:4C–1 to –40], together with the deficiencies, if any, incurred in the previous year. The Legislature shall include the amount so determined and stated, in the annual appropriations bill.

*N.J.S.A.* 30:4C–15 provides that DYFS may initiate a petition to terminate parental rights on the grounds of the best interests of

the child. *N.J.S.A.* 30:4C–27 authorizes DYFS to "expend such sums as may be necessary for the reasonable and proper cost of maintenance, including board, lodging, clothing, medical, dental, and hospital care, or any other similar or specialized commodity or service as the needs of any such child may require * * *." Under *N.J.S.A.* 30:4C–29, DYFS is authorized to make payments for maintenance from the funds appropriated under *N.J.S.A.* 30:4C–30. Obviously, that contemplates expenditures for the benefit of the child. Logically, paying for transcripts will benefit the child and not just the parent because the entire proceeding is to benefit the child.

In *D.C.*, we held that payments for maintenance did not include payment for defense attorneys because another means of providing counsel was available through the "burdened bar, which devotes countless hours to a broad range of frequently-unheralded *pro bono* endeavors * * *." 118 *N.J.* at 403, 571 *A.*2d 1295. However, no *pro bono* sources provide transcripts.

## IV

Although *N.J.S.A.* 2A:152–17 requires counties to pay for transcripts in prosecution of criminal appeals when the defendant is indigent and makes application to the court, we do not believe that the counties should be held responsible for payment of transcripts in appeals of termination of parental rights. Under *N.J.S.A.* 2A:158–7, the county bears all necessary costs of criminal prosecutions. We found in *State v. Rush*, 46 *N.J.* 399, 414, 217 *A.*2d 441 (1966), that those costs included the cost of counsel's representation of indigents. However, in 1967, the Legislature established OPD to represent indigent criminal defendants, relieving the counties of that obligation. *N.J.S.A.* 2A:158A–1. In *State v. Arenas*, 126 *N.J.* 504, 600 *A.*2d 467 (1991), we held that the Public Defender Act superseded *N.J.S.A.* 2A:152–17 and that OPD, not the counties, must pay for trial transcripts for an indigent defendant even when represented by private counsel. *Id.* at 507, 509–10, 600 *A.*2d 467. In *In re Cannady*, 126 *N.J.* 486, 600

*A.2d* 459 (1991), we held that OPD is required to provide ancillary services, such as an expert, on application by an indigent defendant even if represented by a private attorney. Thus, in the criminal field, OPD and not the county bears the cost of providing attorneys, paying for transcripts, and compensating experts for indigent defendants in criminal cases.

Although termination proceedings are quasi-criminal in nature, the county does not prosecute the proceedings and has not been charged with *parens patriae* jurisdiction over children. The Legislature has designated DYFS as the agency to initiate termination proceedings. Realistically, DYFS will have to pay for those proceedings or those proceedings will not be pursued. Parenthetically, we note that the recent trend in intergovernmental relations has been to relieve counties of the burden of paying State obligations through county property tax. *N.J.S.A.* 2B:2–5 (transferring costs of judiciary); *N.J.S.A.* 44:8–129 (transferring costs of public assistance).

Parental-rights-termination cases are becoming longer and more complex. DYFS knows its caseload and can better budget and plan for the prosecution of those proceedings. We do not believe the Legislature intends that the counties bear that burden. Counties have continued to bear some burdens, for example, civil-commitment costs (*N.J.S.A.* 30:4–68) and municipal-appeal transcript costs for indigents (*R.* 3:23–8(a)), but because parental-rights-termination proceedings are part of a unitary, centralized State program, DYFS should undertake those costs.

Although the issue is not before us, we believe that similar principles should inform the issue of provision of other ancillary services, such as experts, for indigent defendants in Title 30 termination cases. It is true that DYFS cannot be compelled to expend such funds without an appropriation therefor. On the other hand, the cases cannot proceed if indigent defendants have not the means to defend themselves. *See New Jersey Div. of Youth & Family Servs. v. T.C.,* 251 *N.J.Super.* 419, 441, 598 *A.*2d 899 (App.Div.1991) (remanding parental-rights-termination case to

provide indigent defendants with opportunity to present expert testimony). Of course, this right is a qualified right. "Indigent litigants in cases of this kind do not have a limitless right in selecting experts of their own choosing and imposing the cost thereof on the State." *In re Guardianship of S.C.*, 246 *N.J.Super.* 414, 431, 587 *A.*2d 1299 (App.Div.), *certif. denied,* 126 *N.J.* 334, 598 *A.*2d 891 (1991).

## V

Currently, Directive # 5–92 requires indigent appellants "to move for free transcripts in termination of parental rights * * * appeals." Trial courts shall consider and decide those motions under the guidelines set forth in *Dotson, supra.* First, trial courts should determine if the appellants are indigent. Second, trial courts should decide whether the grounds raised for appeal are frivolous. Our experience in reviewing those cases suggests that the appeals are rarely frivolous in the same sense as appeals foreclosed by a statute of limitations or another defense of that nature. In termination cases, the appellate court is usually required to measure the evidence introduced at trial against the established standards for termination of parental rights. *In re Guardianship of J.C.*, 129 *N.J.* 1, 18–19, 608 *A.*2d 1312 (1992). Third, trial courts should determine if an abbreviated transcript is acceptable. In some cases, the issue may be limited to review of a key expert's testimony; in others, the entire transcript may be needed. We note that in many cases, because appellate counsel did not handle the termination proceedings below, that attorney will require a complete transcript to prosecute the appeal. Finally, if alternative means of funding the preparation of transcripts are available, such as private individuals or organizations, or federal child-welfare programs, they should be employed. If no alternative source of financing is available, DYFS shall be required to fund the production of transcripts.

We realize that we cannot compel DYFS to expend sums that the Legislature has not appropriated. *Madden v. Township of*

*Delran,* 126 *N.J.* 591, 612, 601 *A*.2d 211 (1992); *City of Camden v. Byrne,* 82 *N.J.* 133, 149–50, 411 *A*.2d 462 (1980). On the other hand, we believe that if the Legislature had to choose between providing transcripts to indigents from the agency's general appropriations or ending the agency's child-welfare programs involving termination of parental rights, it would choose the former. Furthermore, "[w]e are confident * * * that when DYFS decides to seek termination of parental rights, it bases its decision on the needs of the child, not on the State pocketbook." *D.C., supra,* 118 *N.J.* at 402, 571 *A*.2d 1295.

In these cases the lower courts followed the procedures of Directive # 9–89, which was in effect at the time of the filing of the notices of appeal. We see no need for any further reconsideration of the matters under the *Dotson* standards.

## VI

■ We summarize our holdings in this case and in *E.B., supra,* 137 *N.J.* 180, 644 *A*.2d 1093, also decided today. In cases seeking termination of parental rights pursuant to Title 30, in the absence of any other source of funds, DYFS shall be obliged to provide the services to indigent parties necessary to their defense other than legal representation. In cases brought under or involving violations of Title 9 and the procedures and measures for temporary custody set forth in *N.J.S.A.* 30:4C–12, OPD shall be obliged to provide to indigent parties legal representation and ancillary services, including the production of transcripts when private or public-interest counsel represent the indigent parties.

In these cases, as in the pending child-abuse and neglect case of *New Jersey Division of Youth & Family Services v. K.M.,* 136 *N.J.* 546, 643 *A*.2d 987 (1994) (in which we have entered an order of disposition), we note that unnecessary complexity is introduced into the disposition of those child-welfare cases by the parallel but not congruent tracks of Title 9 and Title 30 proceedings. We note that the Legislature could combine both avenues of child advocacy under a single title with a single mandate to OPD to provide

necessary legal representation. Any savings thought to be achieved by current use of *pro bono* lawyers may be diluted by the legal maneuvers required to sort out the differing responsibilities of DYFS, OPD, the private bar, and public-interest law firms.

The judgments of the Appellate Division are affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.