898 A.2d 1059 (2004)
386 N.J. Super. 71
DIVISION OF YOUTH AND FAMILY SERVICES Plaintiff,
v.
V.J. and R.J. Defendants.
In the Matter of the J. Children.
Superior Court of New Jersey, Chancery Division, Family Part, Camden County.
Decided January 20, 2004.
*1060 Peter C. Harvey, Attorney General, and Nora Pierce, Deputy Attorney General, for the Division of Youth and Family Services.
Lorraine Posner attorney for V.J.
Richard Josselson, Haddonfield, attorney for R.J.
Deborah Klein Davis for the J. Children.
PAGE, J.S.C.
Whether attorneys retained by defendants may represent the defendants in parallel pending cases, for civil child abuse under Title 9, and criminal charges based upon the same facts, is the issue presented. This issue has come before the court on a motion to disqualify the attorneys retained by defendants R.J. and V.J. from further proceedings before the family court. After review of the presentations of the parties and pending proceedings this court finds and determines that there is no apparent conflict or valid reason to disqualify the selected attorneys or deny defendants their constitutional and statutory rights to counsel of their own choosing.
On October 14, 2003 a civil complaint was presented to this court by the State Division of Youth and Family Services (DYFS or "the Division") alleging that defendants R.J. and V.J. had abused and neglected their children, and requesting emergent relief by an order to show cause for the involuntary removal and placement of the children. The verified complaint alleged that the children were severely underweight, malnourished and the victims of "medical neglect." At a hearing at which the defendants appeared pro se, they were advised of their right to counsel, and this court entered an order to show cause placing the children with DYFS with further provisions recognizing the defendants' *1061 rights to counsel, discovery and other provisions. On October 25, 2003, criminal charges for child endangerment and aggravated assault were filed. This case has drawn far-reaching notoriety nationally and internationally with the extensive reporting of alleged facts and other information in the media. On November 19, 2003, the court received letters of representation from Richard Josselson, on behalf of R.J., and Alan Bowman, on behalf of V.J. The return date of the order to show cause was subsequently postponed and the provisions of the original order to show cause have not been complied with by DYFS, including, but not limited to, the presentation of any discovery to the defendants. On December 18, 2003, DYFS filed a motion seeking to disqualify the defense attorneys in the civil child abuse case on the grounds that: "Preclusion of dual representation is necessary to protect the confidentiality of the Division records." The issue of further representation by the named attorneys is one of first impression in New Jersey, which must be determined before the required civil proceedings under Title 9 can be held.
As the basis for its motion, DYFS contends that a conflict exists because the defense attorneys will have access to information from the DYFS files, which are sealed and normally kept confidential outside the Title 9 litigation. It is claimed that the defense attorneys' knowledge and use of the contents of those files in the criminal litigation, which are open hearings, would undermine the statutory policies of confidentiality and privileges, which are meant to encourage appropriate treatment and services for the victims of abuse. The Division contends that there is a potential and appearance of conflict of interest stemming from the "dual" representation of the defendants by the defense attorneys in both the civil and criminal cases.
In response, the defendants have noted that "the State has cited no legal precedent which bars dual representation in these matters." They noted that the cases cited by the State do not involve pending parallel proceedings in civil and criminal courts and do not provide any basis for the disqualification of the retained counsel. They observed that substantial information from the DYFS files has already been published in great detail throughout the national media and "fairness would dictate that defense counsel have the same information." They claim that "the records of DYFS are not only relevant, but most necessary to the defense of all charges" in both the civil and criminal proceedings.
This court's determination initially involves consideration of the defendants' constitutional and statutory rights to counsel of their own choosing under U.S. Const. amends. VI and XIV, N.J. Const. art. I, ¶ 10, and N.J.S.A. 9:6-8.43, and the constitutional rights of parents set out in the cases of Crist v. D.Y.F.S., 128 N.J.Super. 402, 320 A.2d 203 (Law Div.1974), aff'd in part, rev'd in part, 135 N.J.Super. 573, 343 A.2d 815 (App.Div.1975), and In re Guardianship of Dotson, 72 N.J. 112, 367 A.2d 1160 (1976). The court has further reviewed the principles set forth in D.Y.F.S. v. Robert M. and Brenda M., 347 N.J.Super. 44, 788 A.2d 888 (App.Div.2002), and D.Y.F.S. v. K.M., 136 N.J. 546, 643 A.2d 987 (1994). The court has also considered the practical effects of any disqualification of present counsel, including the impact on the pending litigation and the children involved.

The Right to Counsel of Their Own Choosing
"In moving to disqualify defendant's chosen counsel the State bears the burden of proving that disqualification is justified." State v. Catanoso, 222 N.J.Super. *1062 641, 644-45, 537 A.2d 794 (Law Div. 1987) (citing State v. Morelli, 152 N.J.Super. 67, 70, 377 A.2d 774 (App.Div.1977)). In Title 9 neglect and abuse cases the defendants have a specific right to counsel. N.J.S.A 9:6-8.43 provides:
The Court shall advise the parent or guardian of his right to have an adjournment to retain counsel and consult with him. The Court shall advise the respondent that if he is indigent, he may apply for an attorney through the Office of the Public Defender.
In the polestar case of Crist, supra, 128 N.J.Super. at 412, 320 A.2d 203, the court said that "New Jersey has recognized the parent's fundamental interest in the care and custody of children." Judge King, in Crist, noted:
For the State to intrude permanently or only temporarily in a manner designed to disassemble the nuclear family, society's most basic human and psychological unit, without affording counsel and guidance to a class of society's least equipped adversaries strikes the court as a fundamental deprivation of procedural due process.
[128 N.J.Super. at 415, 320 A.2d 203.]
The Crist court, in ruling that parents are entitled to counsel when a child has been temporarily removed, noted that these proceedings are often a prelude to termination of parental rights. Id. at 416-17, 320 A.2d 203. The New Jersey Supreme Court discussed whether the lack of counsel in such cases violates procedural due process in Rodriguez v. Rosenblatt, 58 N.J. 281, 277 A.2d 216 (1971). The Court noted:
The importance of counsel in an accusatorial system such as ours is well recognized. If the matter has any complexities the untrained defendant is in no position to defend himself and, even where there are no complexities, his lack of legal representation may place him at a disadvantage.
[Id. at 295, 277 A.2d 216.]
The U.S. Supreme Court also clearly recognized that the parent's right to custody of children, and the protection of the integrity of the family from arbitrary governmental action, were issues of fundamental constitutional due process. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).
Not only are the defendants entitled to counsel at these proceedings, they are entitled to counsel of their choosing. In the case of State v. Furguson, 198 N.J.Super. 395, 401, 487 A.2d 730 (App. Div.1985) (citing Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954) and Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)), the court ruled that defendants have the right to choose their own counsel. The court in Furguson, stated: "An essential element of the constitutional right to the assistance of counsel is the right of a defendant to secure counsel of his own choice." Ibid. The right to counsel of choice is not absolute. Ibid., see U.S. ex rel. Carey v. Rundle, 409 F.2d 1210, 1215 (3d Cir.1969), cert. denied., 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970); State v. Reddy, 137 N.J.Super. 32, 35, 347 A.2d 545 (App.Div.1975). In Furguson, the defendant was denied permission to change his counsel because the litigation had proceeded far and the purpose of the switch may have been to merely delay the litigation. The court noted that the "public has a strong interest in the prompt and effective operation of its judicial institutions." Furguson, supra, 198 N.J.Super. at 401, 487 A.2d 730. Contrary to the stated policy in Furguson there are no implications in this case that the defendants are trying to delay this litigation.
*1063 In fact it is the Division that is delaying this proceeding in seeking to remove defense counsel. It is the Division that has completely ignored the existing orders of this Court to provide the statutorily mandated discovery. In this respect, R 5:12-3 provides:
All relevant reports of the Division of Youth and Family Services and other reports of experts or other documents upon which the Division intends to rely shall be provided to the court and to counsel for all parties on the first return date of the Order to Show Cause, if then available, or as soon as practicable after they become available. The Division's case file shall also be available for inspection to the attorneys for the parties without court order. All other discovery by any party shall be permitted only by leave of court for good cause shown.
If the Division is successful in disqualifying the defense attorneys the result will substantially delay further the litigation while defendants seek different counsel. In commenting on the delays in Brenda M., supra, 347 N.J.Super. at 66, 788 A.2d 888 (emphasis added). Judge Collester noted:
We do not mean to suggest that defendants were not entitled to timely receipt of pertinent discovery and appropriate time to secure witnesses to challenge the statements and opinions submitted. We understand the reluctance of the trial judge to grant further adjournment in this lengthy and contentious proceeding. It is for good reason that cases of this nature are given priority. The well-being of the children and the family structure are in issue. "Justice delayed is justice denied" is not a simple platitude. It imports a realistic concern, especially where the welfare and safety of children are concerned.

These principles equally apply to the case at hand. To these children, the pending Title 9 civil proceeding involving their ongoing relationship with their parents is most important. Further delay caused by a disqualification of the attorneys, as well as a failure to turn over discovery in a timely fashion, will amount to a "denial of justice."
Most petitions to disqualify the counsel of choice are the result from an alleged conflict of interest arising from the Rules of Professional Conduct. In the case of Morelli, supra, 152 N.J.Super. at 71, 377 A.2d 774, the Appellate Division (citing State v. Lucarello, 135 N.J.Super. 347, 353, 343 A.2d 465 (App.Div.), aff'd o.b. 69 N.J. 31, 350 A.2d 226 (1975)), stated that the "Defendant, of course, is entitled to retain qualified counsel of his own choice. He has no right, however, to demand to be represented by an attorney disqualified because of an ethical requirement." No conflicts of interest relating to the Rules of Professional Conduct or other ethical issues have been raised in the Division's motion. R.P.C. 1:7 applies when the attorney sought to be disqualified, or his current or past firm or employer represented different parties who may have conflicting interests. The Division has not met its burden to show why defendants should be denied their right to counsel of their own choosing. There simply is no "dual" representation presented. There is no potential conflict in representation of the same parties in these parallel proceedings involving the same clients and the same facts. This representation is not precluded by the New Jersey Rules of Professional Conduct or by case law. In fact, it may be construed that the opposite is true. R.P.C. 1.3 requires lawyers to "act with reasonable diligence" in representing their client. The defense attorneys are fulfilling this obligation by representing the defendants in both proceedings.

*1064 The Case Precedents
Attorneys representing the same client in parallel proceedings, with both a Title 9 neglect and abuse case, and in other separate cases, including criminal cases arising from the same incident, is not unprecedented. The principles set forth in Brenda M., supra, and in D.Y.F.S. v. K.M., 136 N.J. 546, 643 A.2d 987 (1994), are on point and serve as a strong guide for this court in this case. The attorneys for the defendants in Brenda M., supra, 347 N.J.Super. at 57, 788 A.2d 888 also represented them in both the Title 9 neglect and abuse case and the criminal trial. This particular issue was not presented as there was no claim of disqualification for the attorneys representing the defendants in that case. Brenda M. also has several other factual similarities to the matter at hand. In that case, the defendants adopted three children from Russia. When brought to the United States, the children were noted to be severely malnourished and ate voraciously. Shortly after arriving in the U.S. the oldest child, Viktor, began to exhibit other problems. Thereafter, the Division was notified that Viktor was in the hospital in critical condition with suspicious injuries consisting of extensive cuts and bruises, and he died the next day. The examining doctor considered medical neglect as a contributing factor. The defendants were arrested and charged with child endangerment and later charged with aggravated manslaughter. The Division filed a complaint for protective services, and an order to show cause for immediate custody, care, and supervision of the children. Despite having many of the same issues and a similar fact pattern as in the present case, the attorneys in Brenda M. were not disqualified or denied the DYFS records which were provided as required by the Court Rules.
An additional discovery issue in that case involved the Prosecutor's office's refusal to turn over some of the requested discovery material prior to the indictment and therefore defendants did not receive that portion of the discovery material in a timely fashion. It must be noted that the attorneys continued to represent the defendants in both the criminal and civil cases. While the allegations of substantial neglect are serious in the case at bar, they do not involve the killing of one of the children and the aggravated manslaughter complaint as in Brenda M. In this respect Judge Collester noted
There is a qualitative and dramatic difference between a case in which it is alleged that a child's death resulted from neglectful conduct by negligent or incompetent parents and one in which it is charged that a child died as a result of physical abuse tantamount to torture.
[Brenda M., supra, 347 N.J.Super. at 67, 788 A.2d 888.]
In D.Y.F.S. v. K.M., supra, 136 N.J. at 560, 643 A.2d 987, the Supreme Court was faced with a similar situation in which "different attorneys represent the same defendants in two separate actions concerning their parental rights." In that matter DYFS had filed a proceeding for abuse and neglect and later another complaint for termination of parental rights. After the children were found to be abused and neglected, an appeal was taken on the child abuse matter, and another complaint seeking guardianship and termination of parental rights under Title 30 was initiated. While the appeal on the first matter was pending, guardianship was awarded to DYFS. It appears that there were "different counsel in all three proceedings." Ibid. Justice Garibaldi, speaking for a unanimous Court, noted the Court's concern stating
Separate counsel not only made this matter unnecessarily complicated but *1065 their lack of communication and the resulting delays caused by both the parties and the courts in the proceedings may also have caused irreparable damage to three small children.
[Ibid.]
While in K.M., supra, both the child abuse and guardianship matters were civil proceedings, it must be noted that termination of parental rights results in a complete loss of a parent child relationship and can be considered the equivalent of civil capital punishment. The court in Crist, supra, 128 N.J.Super. at 415-16, 320 A.2d 203, related termination to "imprisonment in fact or other consequence of magnitude," noting, "[i]t is difficult to consider many consequences of greater magnitude than the loss of one's children." Recognition that in such legal proceedings the result is of such great magnitude to the parents and children requires courts to maximize judicial protection at least as much as in any pending criminal matter. Justice Garibaldi noted the impact on parents as follows:
We also must recognize that this multiple litigation raises issues of fairness to the parties. The parents, R.M. and K.M., Sr. had to defend their interests on two fronts involving common issues.
[K.M., supra, 136 N.J. at 561, 643 A.2d 987.]
See also Guardianship of G.S., 137 N.J. 168, 644 A.2d 1088 (1994); D.Y.F.S. v. E.B., 137 N.J. 180, 644 A.2d 1093 (1994).
The cases of State v. Cusick, 219 N.J.Super. 452, 530 A.2d 806 (App.Div. 1987), Kaszerman v. Manshel, 176 N.J.Super. 132, 422 A.2d 449 (App.Div.1980), and Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) cited by DYFS, are clearly distinguishable. None of these cases involved pending parallel cases involving the exact same parties, facts, and issues. In Cusick, 219 N.J.Super. 452, 530 A.2d 806, after conviction for sexual assault, the defendant attempted to gain access to DYFS records, which after an in camera review by the trial judge, were found to be not necessary for the determination of any issue before that criminal court and were also found to be obtainable from other sources. In Kaszerman, 176 N.J.Super. 132, 422 A.2d 449, the plaintiff wanted to search through DYFS files for the purpose of gaining information for possible future civil suits. In Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40, again on a post conviction review of a conviction for sexual assault, a very divided U.S. Supreme Court, in a plurality opinion, applied Pennsylvania law. The Pennsylvania statutes did not include the affirmative duty to provide the defendants in the civil cases with prompt and timely access "to all relevant reports" as in New Jersey, under R. 5:12-3. The plurality in Ritchie ruled that the criminal defendant could not search through the State's files completely unfettered. Every Justice, in their four published opinions, agreed with the Pennsylvania Supreme Court that the defendant should have some access to the files. Like in Cusick, supra, 219 N.J.Super. 452, 530 A.2d 806, the Court ruled that the relevance of the files could be determined by an in camera review by the trial judge.

The Preparation and Trial of the Pending Title 9 Case
The relevant statutes, court rules, and procedural facts are not in dispute. R. 5:12-3 sets out the required discovery, and N.J.S.A. 9:6-8.10(a) establishes the confidentiality of the records. All of the relevant rules of evidence, including but not limited to privileges and the admissibility of DYFS records, remain in full force and effect and are not in any way altered or changed by the representation of the defendants by specific counsel. Even if their *1066 present attorneys were disqualified, the defendants would be entitled to the normal release of information, subject to the same restrictions and protective orders as if they represented themselves pro se. In this respect, the identity of particular counsel is not a relevant or material consideration, as the defendants themselves will possess the information to the extent permitted by the court and as required to be produced by DYFS under R. 5:12-3 if they continue with other counsel or pro se. Under R. 3:13-3(b), defendants would be entitled to discovery within fourteen days of indictment in the criminal case. In this court's experience, while there have been many serious parallel cases involving murder and sexual abuse, the case at bar is the first case where the defendants have been completely denied all access to discovery and counsel of their own choosing.
As noted in Brenda M., supra, 347 N.J.Super. 44, 788 A.2d 888, DYFS must make a good faith effort to comply with this requirement. DYFS cannot be penalized at the trial of this case if the prosecutor's office refuses to divulge other information until it is required to do so within fourteen days of indictment under R. 3:13-3(b). To date, DYFS has refused to follow the Court Rules, statutes, and two specific orders entered in the normal course of business of the case processing and management of this child abuse and neglect case. As noted by Judge Collester in Brenda M., supra, 347 N.J.Super. at 65, 788 A.2d 888, there must be "a good faith effort by the division to comply with discovery obligations." That court also advised trial courts that "judges must be mindful of the potential for abuse of defendants' civil or criminal procedural rights." Id. at 64, 788 A.2d 888.
The contention that the attorneys' representation of these defendants in both the civil and criminal matters somehow impairs the confidentiality of their records or statutory privileges is totally without merit. The decision on this motion for disqualification does not in any way, change, limit, modify, or decide any of these protections set out by statute or court rule. Any and all objections to the unauthorized use of this information or its proper exclusion at any of the confidential hearings under Title 9 are fully preserved and shall be considered by the family court upon timely presentation. As previously noted, upon the good faith effort of DYFS to comply with all relevant court rules and statutes, this court will do its best to protect and ensure that the necessary confidentiality and privileges are respected. In this respect, as noted by the law guardian at argument, and the defendants in their brief, substantial information has been disclosed from DYFS reports and files to date and appears regularly in the statewide and national media, including details about biological parents, and even a prior psychiatric report on one of the children obtained by DYFS years ago. While this court cannot condone any unauthorized83 release, DYFS seems to propose a double standard of not seeking to protect the information divulged from unexplained sources, while at the same time precluding the defendants from having any information whatsoever. Common practice throughout the State is that issues involving the required discovery under R. 5:12-3 and the status of children and their families be decided in the family court in the pending Title 9 case, and related issues involving the required discovery under R. 3.13-3(g) and the admissibility of reports to be used in the criminal trials be presented in pretrial proceedings to the criminal court. In any event, this court stands ready, willing, and able to issue protective orders and do whatever is necessary to protect the victims of abuse. This includes directives to DYFS, the defendants, and the law guardian *1067 to make every effort to keep the proceedings confidential, avoid unauthorized release of information, and advocate solely for the expressed interest of their own clients in this very important civil child protection proceeding. Concern has been expressed that there appears to be some hidden agenda that has diverted the focus of these Title 9 proceedings from the children themselves to other governmental interests. This court and the parties before it in this action must never lose sight of the focus on these children and the remedies, rights, and responsibilities of all concerned in this child protection proceeding. The children, J.J., and her brothers and sister, deserve nothing less than everyone's full attention in this proceeding.
As this case now proceeds, it must proceed expeditiously and be guided by the stated principles set out in the applicable statutes, court rules, and most recently in D.Y.F.S. v. J.Y., 352 N.J.Super. 245, 800 A.2d 132 (App.Div.2002).